# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 91-KA-00856-SCT

*ALVIN LEE JACKSON AND LARRY V. JACKSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/6/91 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | DONALD RAFFERTY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 2/20/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/13/97 |

EN BANC.

BANKS, JUSTICE, FOR THE COURT:

¶1. We are compelled to reverse the convictions in this case because the defendants were tried, in absentia, in violation of our statutory law as most recently interpreted by this Court in *Sandoval v. State*. A recurring issue in this case is the decision of the trial court on the question of the legality of the search. We pass upon other dispositive issues and those likely to recur.

## I.

¶2. This is an appeal from the final judgment and verdict of the Circuit Court of Harrison County, Mississippi, First Judicial District, wherein Alvin Lee Jackson and Larry V. Jackson, the defendants, were convicted of possession with intent to distribute under Miss. Code Ann. § 41-29-139(a)(1) (1972).

¶3. On March 29, 1989, law enforcement officers, specifically officer Revere Christopher, received information from a confidential informant that some individuals from Louisiana desired to sell a quantity of cocaine. The narcotics task force set up the arrest of defendants Alvin Jackson and Larry Jackson, with the participation of Boise Moore, the confidential informant. Officer Christopher was informed that there would be three cars following one another on Interstate 10. Moore would be in

the lead car, a red Ford Mustang with a Louisiana tag and two black males would follow, with a Chrysler LeBaron taking the third position. The LeBaron was the car indicated and believed to have the drug package. From this information, the officers effectuated a plan of surveillance concerning the narcotics stop. The car was stopped and searched and the controlled substances were found.

¶4. On January 10, 1990, the grand jury indicted the defendants for possession of cocaine with the intent to transfer or distribute. Subsequent to the indictments, the defendants jointly filed a motion to suppress. A hearing was held on October 8, 1990, on the motion to suppress. By order dated October 8, 1990, this motion was overruled.

¶5. On October 9, 1990, a co-defendant, Leonard Harvey, pled guilty to a reduced charge of possession of a controlled substance. Defendants Alvin Jackson and Larry Jackson proceeded to trial which began on October 9, 1990. The trial ended in a mistrial on October 10, 1990. The amount of drugs offered into evidence did not conform to the evidence of the drugs allegedly seized. On February 4, 1991, the Jacksons re-submitted their motions to suppress the evidence. No hearing was held on these motions and no order was entered.

¶6. The Jacksons' second trial began on February 5, 1991, and concluded on February 6, 1991, with the jury finding the defendants guilty. Both defendants were sentenced to serve a term of twenty-five years in the custody of Mississippi Department of Corrections and both were fined $200,000. Aggrieved by the findings of the lower court, the Jacksons appealed raising a number of issues.

## II.

¶7. The issue compelling reversal involves proceedings conducted in the absence of the defendants. The facts indicate that due to a brawl engaged in on the morning of trial, Alvin arrived at trial during selection of the jury panel and Larry arrived later during cross-examination of the State's second witness.

¶8. Defense counsel informed the court that defendants Alvin Jackson and Larry Jackson had a fist fight earlier that morning. As a result, neither defendant was present in the courtroom for voir dire to proceed. Counsel indicated his belief that Alvin Jackson would arrive by mid-morning and that Larry Jackson could not be found. The defense requested that the case be reset. The court declined to postpone the beginning of the trial and commented, "They knew when they were supposed to be here. I can't hold up the court proceedings because of the defendants' dispute between themselves and their failure to be here."

¶9. The Jacksons contend that they were denied their constitutional rights to confront their accusers and to be present at their trial under Miss. Const. Article III., § 26 (1890).

¶10. Miss. Code Ann. § 99-17-9 (1972), entitled Trial in the absence of accused, reads:

> In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court, in his absence, if he be in custody and consenting thereto. If the defendant, in cases less than felony, be on recognizance or bail or have been arrested and escaped, or have been notified by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or be in any way in default for nonappearance,

the trial may progress at the discretion of the court, and judgment final and sentence be awarded as though such defendant were personally present in court.

This statute does not offend the dictates of the Mississippi Constitution. **Williams v. State**, 103 Miss. 147, 60 So. 73 (1912).

¶11. In *Sandoval v. State*, 631 So. 2d 159 (Miss. 1994) we construed the statute. In that case, a trial proceeded, and a conviction ensued, although the defendant was not present at any stage of trial. Citing a host of authority, we reversed the conviction, holding that "an accused felon present at the *commencement* of his trial may thereafter waive his appearance by absenting himself from the trial." (emphasis supplied). *Sandoval*, 631 So. 2d at 164. *See Gales v. State*, 64 Miss. 105, 106 (1886) ("if after the trial commenced [defendant] voluntarily absented himself, or absconded, he must take the consequences of his bond being declared forfeited, and of the trial being concluded in his absence"); *McMillian v. State*, 361 So. 2d 495, 497 (Miss. 1978) ("Inasmuch as McMillian was present in court when the trial was begun and the jury examined, selected and sworn in, it is our opinion that he was in custody at the time he voluntarily left and fled and thus escaped"); *Crosby v. United States*, 506 U.S. 255, 262, 113 S. Ct. 748, 753, 122 L.Ed.2d 25, 33 (1993) (construing the language of Federal Rule 43 which permits trial of accused felons *in absentia*, the court ruled, "[t]he language, history, and logic of Rule 43 support a straightforward interpretation that prohibits the trial *in absentia* of a defendant who is not present at the beginning of trial"). This Court's prior decision in *Samuels v. State*, 567 So. 2d 843 (Miss. 1990) was superseded by *Sandoval* to the extent that *Samuels* does not require a defendant to be present during the commencement of trial for his waiver to be effective.

¶12. In the present case, Larry arrived at trial during cross-examination of the State's second witness. Because he did not arrive until well after the commencement of trial, it cannot be said that he waived his right to be present at trial. Alvin arrived during the selection of the jury panel after voir dire was completed. Nonetheless, like Larry, Alvin was not present when trial commenced and cannot be deemed to have waived his right to be present. Since neither can be said to have waived his right to be present at trial, this case must be reversed for a new trial.

### III.

¶13. A pre-trial hearing was held on the motions of defendant Harvey and of defendants Alvin Jackson and Larry Jackson, to suppress all evidence seized as a result of the March 29, 1989, narcotics investigation. During this hearing, the State admitted that the stop of the defendants was a narcotics stop rather than a traffic stop. Defendants Alvin and Larry Jackson agreed to go forward with the motion to suppress hearing if the State made the informant available to the defense. The State informed the defendants that the confidential informant, Boise Moore[1], was dead. Then, the defendants agreed to go forward "if the District Attorney's Office [was] willing to state that this is a probable cause case. . . ." At this point, the lower court implicitly accepted this offer of the defendants, denied the request for continuance of Harvey, and moved forward on the motion to suppress.

¶14. The defendants contend that Mississippi law places the burden of proving that a search or a seizure was proper on the State. The State argues that the trial court found the defendants' motion to be vague; therefore, the trial court should be upheld on this point.

¶15. The threshold question is whether or not the motion to suppress was legally sufficient to warrant a suppression hearing. There is no motion found in the present record in order for this Court to review the issue of vagueness. The defendant bears the burden of designating the record. **Lambert v. State**, 574 So. 2d 573, 577 (Miss. 1990). The trial court found that the motion was vague and required the defendants to go forward. It is obvious to the Court that the defendants failed to make an adequate record of the proceedings prior to trial and now, on appeal, attempt to capitalize on the very ambiguity they created. Due to our lack of ability to review, this Court affirms the lower court's holding that the motion to suppress was vague. *See* **McGowan v. McCann**, 357 So. 2d 946 (Miss. 1978) (holding that remarks not made part of record could not be considered on appeal). Therefore, it was proper for the defendants to go forward at the hearing.

¶16. During the suppression hearing, two law enforcement officers who had participated in the investigation were called to testify. Officer Revere Christopher testified that on March 29, 1989, he received a call from a confidential informant, named Boise O'Neal Moore. Christopher relayed that Moore was a very reliable informant[2] and that he had double checked the information regarding the defendants through the New Orleans Police Department and the Drug Enforcement Agency. Moore had informed Christopher that there were three cars which would be traveling through the Mississippi Gulf Coast area on Interstate I-10. Moore indicated that his car would lead, that the second car would be a red Ford Mustang 5.0 with two black males, and that the third car, a LeBaron, would contain the drugs. No search warrant was obtained. There was no dispute; the officers admitted that there was "plenty of time" to request a search warrant. However, Christopher added that the officers had fifty percent of what they needed for a search warrant.

¶17. As per their arrangement, the narcotics team stopped the three cars. Defendant Harvey was in the LeBaron, the third car. Officers Christopher and Delgado stopped the second car, the Ford Mustang, wherein Alvin and Larry Jackson were found. No contraband was found in the Jacksons' car. However, Christopher testified that the Jacksons were not free to leave because: (1) the officers had information that the defendants were involved in narcotics trafficking; (2) the vehicle they were driving fit the same make, model, and Louisiana license plate of the car described by Moore; (3) the posture of the car was the second car as Moore said would be following the informant and (4) the defendants were connected to the car carrying drugs by rental agreement.

¶18. Officer Collins testified that once the LeBaron was stopped, the officers removed Harvey from the car and moved Harvey to the rear of the vehicle. The officers then read Harvey his **Miranda** rights. During a cursory search of the car, officer Collins found a duffle bag with what felt like guns inside. Officer Collins testified that at that point he asked defendant Harvey if he could search the car. Harvey replied that he could and that the car did not belong to him. Collins admitted that he searched the contents of the **bag** without Harvey's specific consent. Collins also admitted that there was nothing to prevent him from seeking a search warrant once he had control of the duffle bag. By order dated October 8, 1990, the lower court overruled the defendants' motions to suppress.

¶19. This Court must examine facts to determine whether probable cause exists or existed based on "information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found." **Rooks v. State**, 529 So. 2d 546, 555 (Miss. 1988). There was testimony that Moore had given reliable and accurate information in the past. Moore was corroborated when the officers in fact saw the three vehicles, accurately fitting the

description by Moore, traveling along Interstate 10 in tandem. Thus, reliable information coupled with their individual observations, demonstrates that the officers had sufficient probable cause to stop and search the defendants.

¶20. A warrantless search does not automatically result in a violation of the Fourth Amendment rights against illegal search and seizure. Following **Carroll v. United States**[3], when the search involves a vehicle, there are generally sufficient exigent circumstances which override the necessity of a law enforcement officer obtaining a search warrant through a neutral magistrate, thus a lawful search may be performed.[4] "[P]olice officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle as thorough as a magistrate could authorize by warrant." **Fleming v. State**, 502 So. 2d 327, 329 (Miss. 1987) (quoting **Roby v. State**, 419 So. 2d 1036, 1038) (Miss. 1982)); see also **United States v. Ross**, 456 U.S. 798 (1982) (holding that stop of vehicle based on probable cause justifies search of every part of vehicle that may conceal object of search). "The justification to conduct such a warrantless search does not vanish once the car has been immobilized." **Michigan v. Thomas**, 458 U.S. 259, 261 (1982).

¶21. Such is true in the present case. There was sufficient probable cause to stop and search the Harvey car. Because probable cause existed and the search involved an automobile, it was permissible for the officers to search the car and its contents without a search warrant and without the consent of Harvey. It is obvious to the Court that the officers' information more than justified the probable cause to make a warrantless stop of the vehicle. Thus, we find the contention that the evidence must be suppressed to be without merit.

## IV.

¶22. The first trial ended in mistrial when it was discovered that the evidence to be offered differed in amount from that allegedly seized from the Harvey vehicle. Regarding the inconsistency, Officer Revere Christopher testified during the second trial: (1) he noticed the weight of the cocaine being offered into evidence was inconsistent with the weight the team had seized, approximately one kilogram, (2) he retrieved the evidence from the Harrison County Sheriff's Department and took it to the Drug Enforcement Administration, and (3) he reweighed the evidence and found that approximately half the cocaine was missing.

¶23. Testimony revealed that the substance was weighed at the crime laboratory in June, 1989, before the substance was sent to be fingerprinted. At that time, the evidence weighed 992.1 grams. The evidence was reweighed by the crime laboratory in October, 1989, at 400.7 grams. There was sufficient testimony from key crime laboratory personnel and law enforcement officers that the missing cocaine was taken **after** the cocaine was weighed in June, 1989.

¶24. Defendants assert that they moved to suppress the evidence but that the trial court improperly failed to hold a hearing, and allowed the State to proceed to explain to the jury why a portion of the cocaine was missing. The Jacksons also assert that the State failed to show that it had acted reasonably and in good faith in accord with **Jones v. State**, 523 So. 2d 957 (Miss. 1988).

¶25. The case cited by the defendants, **Jones v. State**, involved missing drug evidence wherein the defendant claimed he was denied the opportunity to effectively cross-examine the State's witness. In

**Jones**, we found the defendant's contention to be without merit even though the evidence was totally lost and the State could not explain the disappearance. **Id**.

¶26. It is our opinion that the present record clearly supports a finding that the State acted reasonably and in good faith.[5] The first trial ended in a mistrial due to the observations of Officer Christopher who followed up on his suspicions by reweighing the evidence. Linda Weeks, Associate Director of the Mississippi Crime Lab in Gulfport, soundly established that the original weight of the evidence was 992.1 grams. There are no allegations that the crime laboratory used unreasonable procedures. Therefore, the State sufficiently proved good faith at trial.

¶27. Additionally, we note that the Jacksons failed to move the court to suppress the cocaine at trial on this ground, contrary to their assertion on appeal. In the absence of a request for a suppression hearing to determine the admissibility of evidence, the trial court does not err in failing to have such a hearing. **Buford v. State**, 372 So. 2d 254 (Miss. 1979). There being no motion or request for a hearing at that time, this Court finds that the issue is without merit.

## V.

¶28. The defendants contend that the State failed to prove that they were either in actual possession or constructive possession of the cocaine beyond a reasonable doubt.

¶29. The standard of review requires this Court to consider all the evidence in the light most consistent with the verdict. **Jackson v. State**, 580 So. 2d 1217, 1219 (Miss. 1991). The Court may reverse "only where the evidence is such that reasonable and fair-minded jurors could only find the defendants not guilty." **Heidel v. State**, 587 So. 2d 835, 838 (Miss. 1991).

¶30. Because the drugs were found in Harvey's car, the State necessarily had to establish the Jacksons were in constructive possession of the cocaine. "What constitutes a sufficient external relationship between the defendants and the narcotic property to complete the concept of 'possession' is a question which is not susceptible of a specific rule." **Arnett v. State**, 532 So. 2d 1003, 1011 (Miss. 1988). To prove constructive possession, the State must have provided evidence that the contraband was under the dominion and control of the defendant. **Roberson v. State**, 595 So. 2d 1310, 1319 (Miss. 1992). Where the defendant is not in control of the premises, that is, the car, the State has the burden of providing competent evidence which would connect the defendant to the cocaine. **Campbell v. State**, 566 So. 2d 475, 476 (Miss. 1990). If competent evidence fails to connect the defendant with the contraband, then the accused is entitled to an acquittal. See **Powell v. State**, 355 So. 2d 1378, 1379 (Miss. 1978).

¶31. We find that such competent evidence did exist to connect the defendants with the cocaine. Beyond the testimony presented by Officer Christopher, there was the corroborating testimony of Harvey. A summary of the facts before the jury includes:

    (1) the defendant Larry Jackson physically gave Harvey the cocaine;

    (2) the transfer of the cocaine took place at the Jacksons' place of business, the Magic Sun;

    (3) all events occurred under the direction of Larry Jackson;

(4) Harvey, an employee, transported the Jacksons' cocaine in a car that had been rented by Alvin Jackson;

(5) Harvey did not know where he was going, therefore, he followed the Jacksons' car;

(6) while still in New Orleans, Harvey lost track of the car and went back to the Jacksons' place of business;

(7) defendants, Alvin and Larry Jackson, returned to the place of business and started out again to deliver the cocaine in Mississippi.

Additionally, positive proof that the defendants were linked to the Harvey car included rental papers found in the LeBaron with Alvin Jackson's signature. There is absolutely no doubt whatsoever that the defendants were aware of the presence and character of the cocaine, and that they exercised dominion and control over it, sufficient for the jury to find constructive possession. Thus, this assigned error is without merit.

## VI.

¶32. The defendants argue that even if there was sufficient evidence of constructive possession, then the Court should still reverse on the grounds that there was insufficient evidence of intent to distribute.

¶33. "Intent to distribute or dispense controlled substances may be established by circumstantial evidence." **Hicks v. State**, 580 So. 2d 1302, 1305 (Miss. 1991).

> Indeed, a jury may reasonably conclude that a defendant intended to unlawfully distribute a controlled substance **if the quantity or nature of the seized substance evidences an intent to distribute** -- as opposed to an intent to merely possess for personal use.

**Id**. (emphasis added). "The evidence sufficient to infer intent to [deliver] must be evaluated in each case." **Jackson v. State**, 580 So. 2d 1217, 1220 (Miss. 1991). Where contraband is present in amount which a person could reasonably hold for personal use, other evidence of possible involvement in drug trade may be sufficient to establish intent to deliver. **Jowers v. State**, 593 So. 2d 46, 47 (Miss. 1992) (finding amount of evidence alone was insufficient to establish intent to deliver); see also **Ivy v. State**, 589 So. 2d 1263, 1266 (Miss. 1991) (holding that thirteen pounds of marijuana was sufficient evidence of intent to distribute).

¶34. Examining the facts of this case in the light most favorable to the State, the evidence was sufficient to establish beyond a reasonable doubt that the Jacksons intended to deliver the cocaine. In this case, the quantity was beyond the amount which an average user could consume. The quantity coupled with the testimony of Harvey and Officer Christopher regarding the arrangements of the "buy" provided sufficient evidence of intent to distribute. No reasonable jury could have determined that the defendants lacked the intent to distribute. Because the State sufficiently met its burden of proof, this assignment of error is without merit.

## VII.

¶35. Defendants claim that the trial court violated M.R.E. 404(b) when it allowed and permitted evidence of alcoholic beverages, failing to yield to blue lights, resisting arrest and reckless driving, to prove that the officer acted within his authority in arresting the defendants.

¶36. We disagree. M.R.E. 404(b) excludes testimony concerning other crimes, wrongs or acts which come into evidence to establish conformity with the crime charged. In ***Mackbee v. State***, 575 So. 2d 16, 27 (Miss. 1990), this Court held that, "[e]vidence of another offense is admissible when the offense is so clearly interrelated to the crime charged as to form a single transaction or closely related series of transactions."

¶37. In the present case, the above testimony did not come in to show that the defendants were acting in conformity with another episode. There is only one episode -- the one in which the defendants were stopped and ultimately arrested. The contested testimony related only a part of the entire series of events or transactions which occurred; therefore, the testimony falls outside of the proscription of the Rule 404(b). Accordingly, we find that this assigned error is meritless.

¶38. During the pre-trial hearing on the motion to suppress, the defendants complained that the defense had a right to call the confidential informant, as the informant played a critical role in the overall conspiracy. The State asserted that the motion to disclose the informant was untimely as it was served on the State that same morning. Next, the State revealed that the confidential informant, Boise O'Neal Moore, was dead. The State offered and presented testimony from officer Revere Christopher, who testified that Moore died of a massive heart attack on May 11, 1990, in Mobile, Alabama.

¶39. During the trial, the defendants objected to the testimony by Officer Christopher regarding the arrangements for the purpose of securing a controlled substance, made by and through the confidential informant. Defense counsel continually and consistently objected to Christopher's testimony regarding the specific details of these arrangements made between Christopher and Moore, stating that the "evidence directly or indirectly from a third source," was hearsay and irrelevant. With the exception of twice asking the prosecution to lay a predicate or rephrase his questions, the trial court overruled these objections.

¶40. The Jacksons claim that the trial court impermissibly allowed the State to introduce into evidence statements by the confidential informant, in contradiction to M.R.E. 803 and 804.

¶41. It is enough to say that we do not agree that the testimony of Officer Christopher was hearsay. Christopher testified only to knowledge that he had arrangements made with the confidential informant. The fact that the other person from whom Christopher learned valuable information was not unavailable does not make what Christopher learned from that informant hearsay. M.R.E. 801(c).

### CONCLUSION

¶42. For the reasons stated above in Part II, the judgment of the circuit court is reversed and this matter is remanded to that court.

¶43. **REVERSED AND REMANDED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., CONCUR. McRAE, J., CONCURS IN PART**

**AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. PITTMAN, J.,
DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, SMITH AND
MILLS, JJ.**

### McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶44. I agree with the majority that this case must be reversed and remanded for a new trial. However,
I would do so because the defendants were subjected to an unlawful search and seizure, as explained
in my dissent in *Sanders v. State,* 678 So.2d 663 (Miss. 1996). Here, as in *Sanders*, the arresting
officers clearly had sufficient time to obtain a search warrant before searching the automobile. Under
these circumstances, I would require a warrant. Accordingly, I dissent.

### PITTMAN, JUSTICE, DISSENTING:

¶45. I dissent from the majority's decision because both Alvin Jackson and Larry Jackson waived
their right to be present at parts of the trial proceedings when they deliberately absented themselves
from parts of the commencement of the trial.

¶46. There is a statute that speaks directly to the procedure for trial in the absence of the defendant.
Mississippi Code Annotated § 99-17-9 (1972), entitled **Trial in the absence of accused**, reads:

> **In criminal cases the presence of the prisoner may be waived, and the trial progress, at
> the discretion of the court, in his absence, if he be in custody and consenting thereto.** If
> the defendant, in cases less than felony, be on recognizance or bail or have been arrested and
> escaped, or have been notified by the proper officer of the pendency of the indictment against
> him, and resisted or fled, or refused to be taken, or be in any way in default for nonappearance,
> the trial may progress at the discretion of the court, and judgment final and sentence be
> awarded as though such defendant were personally present in court.

Miss. Code Ann. § 99-17-9 (1972)(emphasis added). This statute does not offend the dictates of the
Mississippi Constitution. *See Williams v. State*, 103 Miss. 147, 60 So. 73 (1912). When a defendant
executes a recognizance bond, which requires his presence before a court, he is no longer at liberty
but is in custody of the law for purposes of the statute providing that trial may progress in his
absence when he has fled or is any way in default for nonappearance. *See, e.g., Samuels v. State*, 567
So. 2d 843 (Miss. 1990).

¶47. It is said (and this writer believes) that confession is good for the soul. Furthermore, this writer
would suggest that confession of error can be good for a court and unfortunately is sometimes
necessary. In *Samuels v. State*, written by then Chief Justice Roy Noble Lee, this writer joined a
unanimous Court which held that it is in the discretion of the trial court to hold that a defendant has
waived his right to be present if he was indicted for a felony and released under a recognizance bond
and was fully informed of his or her trial date, yet purposefully absented himself from the court. The

*Samuels* decision was necessary under the realities of the modern day criminal situation and the propensities of the modern day defendants. Most accused persons are released before trial and courts do not restrict their coming and going. They can easily absent themselves at the moment of trial and completely disrupt for that moment or that day the process of the judicial system.

¶48. This Court, thirty-nine months after *Samuels*, in an opinion adopted by a six-vote majority (with this writer voting with the majority), walked away from its unanimous holding in *Samuels*. *See Sandoval v. State,* 631 So.2d 159 (Miss. 1994). The Court effectively waived the public's and the judiciary's right to require appearance at trial of a defendant who was "out on bond."

¶49. The public's right to require presence for trial must be greater and more important than the dalliance of a defendant who absents himself without reason and without notice to the trial court. *Sandoval*, at best, abandoned the unanimous holding of the *Samuels* Court, and this writer erroneously abandoned his prior position. Justice Smith's dissent (joined by Justices Prather and Roberts) argued that the Court should not vacate the *Samuels* holding. I must confess my error and with apologies to the three dissenters of *Sandoval* now rejoin them and my position that I first took in *Samuels.* We must require a defendant, released on a bond, to be present for trial on the day set (if the defendant is informed of the time and the place to appear). The majesty of the law must not be subjected to the caprice and whims of a defendant who, after being released under a bond, absents himself intentionally at the day of trial.

¶50. Therefore, in accordance with the reasoning of *Samuels*, the defendants *sub judice* were no longer at liberty, but were "legally" present for the purposes of trial. The defendants offer no proof or evidence that their intentional absence caused any prejudice to them. Moreover, they do not cite any trial occurrence during their absence that prejudiced them or argue that they would have objected to any specific action had they been present at the commencement of trial. They do not argue that their voluntary absence had any effect on the defense to the charges before the court.

¶51. To allow a defendant to thwart the judicial processes by simply, at the instant of trial, walking out of the courthouse would endanger the certainty of almost every case prepared for presentation to a court. The defendants exercised their discretion to absent themselves from the court without court approval at a time when they were under bond and they do not show any particular prejudice caused by their temporary absence. Therefore, the court below did not abuse its discretion by continuing the trial in the voluntary absence of the defendants. In this instance, we may say that the defendants waived (by their actions) their right to be present at a time when they were in "legal" custody and that the defendants through their deliberate actions consented to the trial beginning without them.

¶52. The majority holds that under *Sandoval* a defendant must be present at the commencement of trial in order to waive his right to be there. Thus, under today's holding a defendant could absent himself at the commencement of trial and later appear (e.g., during voir dire) for the trial in its entirety. However, the trial will be for naught because the defendant was not there at the commencement and thus, we will reverse and remand for a new trial, holding it was held in his absence without the defendant properly waiving his right to be present.

¶53. The majority has effectively put the defendants in charge of the courtroom. No longer will trials begin when docketed and the lawyers, judge, and jury are ready; now, we will wait until the defendant decides he is ready to appear in court and face his charges. It is likely that many defendants

do not want to go to trial for fear of the outcome. We have now provided a convenient option for such defendants--do not appear in court. The defendants *sub judice* were free from incarceration because of a recognizance bond. They knew when to be in court and they willfully absented themselves from court. Thus, under *Samuels* and Miss. Code Ann. § 99-17-9 (1972), they may be deemed properly before the court or to have waived that right and it was not error to proceed without them.

¶54. For the aforementioned reasons, I must respectfully dissent from the majority opinion.

**ROBERTS, SMITH AND MILLS, JJ., JOIN THIS OPINION.**

1. Moore died from a massive heart attack on May 11, 1990.

2. The officer was able to cite for the record two federal cases that resulted in convictions based upon the information from this same confidential informant.

3. *Carroll v. United States*, 267 U.S. 132 (1925), recognized the "automobile exception" to the warrant requirement when probable cause and exigent circumstances exist. "This exception is found on the basic premise that for IV Amendment purposes there is a fundamental difference between houses and cars. [citations omitted]." *See also* **Barry v. State**, 406 So. 2d 45, 47 (Miss. 1981).

4. See **Hall v. State**, 288 So. 2d 850, 851 (Miss. 1974), wherein the Court stated:

> An automobile may be searched, given the proper circumstances, without a warrant either as an incident to a valid arrest or because there is probable cause that the vehicle itself may be evidence of crime or contain something that offends against the law.

5. In **Coyne v. State**, 484 So. 2d 1018 (Miss. 1986), the Court held, "Where the State is unable to comply with a request for production of evidence because of its unavailability, the State must show that it has acted reasonably and in good faith in the premises." **Id.** at 1021.