# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-KA-00737-SCT

*RICHARD DEWAYNE PLEASANT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/13/95 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TOM SUMRALL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| | BY: WAYNE SNUGGS |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/23/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/13/97 |

**BEFORE PRATHER, P.J., BANKS AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Richard Dewayne Pleasant was found guilty of capital murder by a jury of the First Judicial District of the Harrison County Circuit Court on March 15, 1995. He was sentenced to life in prison. Pleasant now contends that there was insufficient evidence to convict him of capital murder, that the State improperly changed its theory of prosecution in mid-trial and that his case was prejudiced by the State's mention of gang activity. Finding no merit to these arguments, we affirm the circuit court's order denying Pleasant's motion for a new trial.

## I.

¶2. Seventeen-year old Wayne Pleasant, along with thirteen-year old Jeffrey Robinson, was indicted on October 8, 1993 by a grand jury of the First Judicial District of the Harrison County Circuit Court. They were charged pursuant to Miss. Code Ann. § 97-3-79 with the killing of a convenience

store clerk while committing armed robbery. Pleasant entered a plea of not guilty.

¶3. The State waived the death penalty for both Pleasant and Robinson. The Circuit Court granted the State's motion to join both defendants for trial and to allow the introduction of taped statements made to law enforcement authorities at the time of their arrests. A jury trial was held on March 14, 1995. Midway through the proceedings, Robinson entered a guilty plea to the capital murder charge against him. At the State's request and over Pleasant's objection, a lesser-included offense instruction was given and the jury was instructed that it could find him guilty of murder or capital murder, or not guilty. Pleasant's motions for a directed verdict were denied. The jury found him guilty of capital murder. Pleasant was given a life sentence in the custody of the Mississippi Department of Corrections. His motion for a new trial was overruled on July 14, 1995.

II.

¶4. Paul Vernon Simmons died of a gunshot wound to his chest at the Majik Mart where he worked on Hewes Avenue in Gulfport, Mississippi on May 16, 1993. Gary Rowan discovered the store in disarray at 2:25 a.m. while delivering newspapers for the Sun Herald and called police. Officer David Montague and two other patrolmen from the Gulfport Police Department arrived at the scene and found Simmons' body at the end of the counter. A rack and some cigarettes were knocked over and several items were broken. Detective Rodney Fountain found five spent projectiles near the body which, he stated, indicated that the perpetrator had probably used a revolver. He testified that the cash register drawer was closed and he could not determine whether anything had been taken from the store. An audit by the manager of the Majik Mart later determined that no cash had been taken.

¶5. Myrtis Majors heard about the shooting at the Majik Mart from her sister and her son, Ezra Charles "Chuck" Davis. She testified that her son's friend, Jeffrey "Rocky" Robinson, admitted that he had shot a man at the Majik Mart the previous night. She stated:

> He say he had went in the store and asked the man to give him the money but the man didn't. He bent down like he was getting something under the counter, and when he raised up he shot him. The he started walking toward him and he shot him again.

After talking with Robinson, she brought her son down to the police station where he gave a statement to authorities. She stated that her son and nephew, Ken Alexander, had been in the car with Robinson and Richard Pleasant when the incident occurred. As a result of the conversations with Majors and her son, authorities obtained a warrant for Robinson's arrest. Robinson was arrested at the home of Lucille Towles, who had notified police of his whereabouts. He told authorities that "Gangster Wayne," as he identified Pleasant, had the gun. Pleasant had given the gun and spent casings to Ken Alexander. Lois Pleasant, Pleasant's aunt, testified that she heard about the gun from detectives asking questions in the neighborhood, found it in a neighbor's home where some children told them a boy had taken a gun, put it in the trunk of a car and called authorities.

¶6. In his taped statement to police, given with his mother present, Robinson said that he had been riding around with three seventeen-year olds, Ken, "Wayne" and "Chuck." He stated that he and "Gangster Wayne" had discussed robbing a store and chose this particular Majik Mart because there was only one car in the parking lot and they knew that this one did not have a camera. Robinson further said that the others in the car did not know of their plan since he and "Wayne" were sitting in

the back seat together. He stated that he first went in the store and bought two bags of potato chips. A lady was there, so he went outside and talked on the telephone until she left. He went back inside and shot the clerk without saying anything to him. Robinson stated that "Wayne" had given him the gun, which "a lot of people" knew he had, and that he had thought they would get $300 or $400.

¶7. Consequently, Pleasant was arrested and brought in for questioning later that day. In his initial untaped oral interview with police, he denied any knowledge of Robinson's intent to rob the convenience store. In his taped statement, made about an hour later with his mother present, he stated that he had been drinking and had the gun. He said "Rocky" asked him if he could use the gun and told him there would be $200-$300 in the store. He stated:

> Um, they were talking and I told 'em that I had had it so we were talking and stuff then me and Rocky had started talking then he said he was gonna rob a store, like that. And then at first, I told him, you know, to don't do it then he kept on talking 'bout me doing it and the he asked me could they use my gun and then I told him okay. (Inaudible).

He further stated that only he and "Rocky" knew about the proposed robbery; that he was sitting in the passenger seat and "Rocky" was sitting behind him.

¶8. At trial, Robinson testified before Pleasant. He admitted that he had killed Simmons and entered a plea of guilty to the capital murder charge against him. Presenting yet another version of the events leading to Simmons' death, Robinson then testified that all four youths had discussed robbing the convenience store. Although he acknowledged that they had been "discussing robberies and stuff," he stated that he shot the store clerk because Pleasant and Alexander told him to, insisting that his only intent was to shoot the man "[b]ecause I didn't have to rob him. I just have [sic] to shoot him." He testified that he had lied to police at the time of his arrest as well as in a letter written to the District Attorney, allegedly at Pleasant's direction, wherein he stated that he killed the store clerk because Alexander told him to. He then testified that he gave the first statement to police to help Alexander out and wrote the letter to the District Attorney to help out Pleasant.

¶9. Pleasant, too, presented at trial still another version of the story he originally had given authorities. He testified that he had not met Robinson or Davis prior to that night, but that he gave the gun to Robinson to put up because he had been drinking. He testified that they'd been drinking and smoking marijuana and driving around, but denied any discussion of robbing the store or killing the store clerk. He stated that he was drunk at the time of his arrest and questioning[1] and made his prior statement to police because:

> Well, when he kept -- when I kept telling that I didn't have anything to do with it, and he kept saying Robinson said that I had did it, I figured no matter what I say they was going to say I was guilty, so I just said what he wanted me to say, that I did it.

¶10. On rebuttal, Robinson testified that he and Pleasant were members of a gang known as the Gangsters. He stated that he went in the store for both the first and second times to shoot the clerk because he had been told to and feared that if he didn't, he would be "violated" or beaten up. While Robinson further testified that they had discussed robbing the store, when asked whether he had intended to rob the store clerk, he simply replied, "Not while I was in the store."

¶11. Pleasant first asserts that the evidence supporting his conviction for capital murder is "neither adequate, credible or substantial." He contends that because there is no evidence that a robbery or attempted robbery took place or that there was "a community of intent" to commit or attempt to commit armed robbery and that the testimony given was contradictory, he could not be found guilty of capital murder. The State argues that despite the changes in the defendants' stories, there is sufficient credible evidence for the jury to have found Pleasant guilty.

¶12. A jury's findings will be reversed by this Court "only where the evidence is such that reasonable and fair-minded jurors could only find the defendants not guilty." *Jackson v. State,* 689 So. 2d 760, 766 (Miss. 1997)(quoting *Heidel v. State*, 587 So. 2d 835, 838 (Miss. 1991)). "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Herring v. State,* 691 So. 2d 948, 957 (Miss. 1997); *Jackson,* 689 So. 2d at 766. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. *Herring,* 691 So. 2d at 957; *Benson v. State*, 551 So. 2d 188, 193 (Miss. 1989)(citing *McFee v. State*, 511 So. 2d 130, 133-134 (Miss. 1987)).

¶13. Pleasant contends that the only evidence to prove a "community of intent" with Robinson so as to warrant his conviction for capital murder is: "1. No robbery or attempt was committed; 2. The statement of Majors that Robinson said he asked the man to give him money; 3. The contradictory statements of both Robinson and Pleasant." This evidence, he contends, is not sufficient, credible or substantial. Looking as we must at the evidence in a light most favorable to the jury's verdict, despite the various versions of the crime given to authorities at the time of arrest as well those presented at trial by both Robinson and Pleasant, only in Pleasant's trial testimony and his initial interview was there any denial of discussion of robbery or intent to rob the convenience store. It is, of course, within the province of the jury to determine the credibility of witnesses, *Groseclose v. State,* 440 So. 2d 297, 300-301 (Miss. 1983), and in this case, the jury had been instructed on the lesser-included offense of simple murder should it disbelieve the statements made by Robinson, Pleasant and Majors about the discussion the youths had had about robbing the store and how much money might be there or determine that these statements were insufficient to establish the requisite intent.

¶14. Pleasant further asserts that there was no robbery or attempted robbery. Although authorities determined that no cash had been taken from the store, Pleasant presents no evidence in support of his assertion that there was not even an *attempted* robbery. Myrtis Majors testified that before he was even arrested, Robinson told her that he had asked the clerk for money and the man said no. It is not unreasonable to assume from the evidence that Robinson attempted to rob the clerk and then decided to kill him when he would not give him any money or before the clerk could comply with his demand.

¶15. Finally, Pleasant sidesteps the fact that there is substantial credible evidence that it was he who provided Robinson with the gun, accepted its return after Simmons was shot and subsequently, arranged for the gun to be hidden. Thus, Pleasant's assertion at trial and on appeal that he was merely an accessory before the fact does not serve to exonerate him. As this Court explained in *Hoops v. State,* 681 So. 2d 521 (Miss. 1996),

"Any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender." *Sayles v. State*, 552 So. 2d 1383, 1389 (Miss. 1989)(citing *Bullock v. State*, 391 So. 2d 601 (Miss. 1980), *cert. denied,* 452 U.S. 931, 101 S.Ct. 3068, 69 L.Ed.2d 432 (1981)).

\* \* \*

The primary distinction between the accessory-before-the-fact and an aider and abettor is the actual or constructive presence of the party. If a person was actually or constructively present at the offense, due to his participation he is an aider and abettor. *Walters v. State*, 218 Miss. 166, 65 So. 2d 465 (1953). If he was not present, he is an accessory-before-the- fact. *Clemons v. State*, 482 So. 2d 1102 (Miss. 1985). *See generally* Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law § 6.6(b) at 128 (West 1986); 22 C.J.S. Criminal Law § 132 (1989).

*Sayles,* 552 So. 2d at 1389. More importantly, this Court has held that there is no difference between an accessory before the fact and a principal. *State v. Peoples,* 481 So. 2d 1069, 1070 (Miss. 1986). "Under [Miss.Code Ann. § 97-1-3], an accessory to any felony before the fact is a principal and may be convicted as a principal in an indictment charging him or her as principal." *Peoples*, 481 So. 2d at 1070 (citing *Blackwell v. State*, 231 So. 2d 790, 792 (Miss. 1970), *cert. denied*, 400 U.S. 848, 91 S.Ct. 43, 27 L.Ed.2d 86 (1970); *Hathorn v. State*, 246 Miss. 135, 149 So. 2d 845 (1963); *West v. State*, 233 Miss. 730, 103 So. 2d 437 (1958); *Goss v. State*, 205 Miss. 177, 38 So. 2d 700 (1949)).

*Hoops,* 681 So. 2d at 533-534. Accordingly, whether we accept Pleasant's assertion that he was "just" an accessory before the fact or the State's argument that he was an accomplice, aiding and abetting Robinson's actions even after the crime was committed, his role is the same as that of the principal.

¶16. Although Pleasant and Robinson both changed their accounts of the crime several times, the evidence is *not* such that reasonable and fair minded jurors could only have found Pleasant not guilty. To the contrary, there is substantial credible evidence that the youths intended to rob the convenience store. Whether the attempt was successful or not does not change the intent. Further, even if the jury had found that there was not enough evidence to prove the underlying crime of armed robbery, it was instructed on the lesser-included offense of simple murder. Finally, whether Pleasant's participation is characterized as an accessory before the fact or an accomplice, he may still be convicted as a principal.

IV.

¶17. Midway through the trial, Pleasant's co-defendant, Jeffrey Robinson, entered a plea of guilty to capital murder. Robinson changed his story for a third time, testifying that all four youths had discussed robbing the Majik Mart but that he went inside a second time and shot the clerk without saying anything to him because Pleasant and Ken Alexander had told him to. On cross-examination as a rebuttal witness, Robinson further testified that he went back in the store a second time to shoot the store clerk, but that while they previously had discussed robbing the store, it was not his intent to do

so when he was in the store. Pleasant then renewed his motion for a directed verdict and a peremptory instruction, asserting that, at best, he was only an accessory before the fact.

¶18. Pleasant now contends that the inclusion of an instruction to the jury on the lesser-included offense of murder had the effect of allowing the State to change its theory of the case to conspiracy to commit murder without amending the indictment. Relying on *Griffin v. State,* 584 So. 2d 1274 (Miss. 1991) for the proposition that an indictment may not be changed except by action of the grand jury, he asserts that "the State was allowed to do indirectly what it could not do directly." The record clearly indicates that conspiracy to commit murder was not set forth as a theory of the case at any time during the proceedings. In its closing argument, as well as in the instructions given to the jury, the State articulated three options for the jurors to consider: the capital murder charge of murder while in the commission of an armed robbery, the lesser-included offense of simple murder and not guilty.

¶19. A lesser-included offense instruction is warranted "'if a 'rational' or a 'reasonable' jury could find the defendant not guilty of the principal offense charged in the indictment yet guilty of the lesser included offense.'" *Ballenger v. State,* 667 So. 2d 1242, 1254 (Miss. 1995)(quoting *Mease v. State,* 539 So. 2d 1324, 1329-30 (Miss. 1989)). Given the contradictory and often changing accounts of the crime given by Pleasant and Robinson, a rational or reasonable jury could have found Pleasant not guilty of capital murder but guilty of murder, depending on whether the jurors believed that the murder occurred during the commission of an armed robbery. A lesser-included offense instruction, therefore, was not improper in this case and cannot be construed as an effort by the prosecution to introduce a new theory of the case not contemplated by the indictment.

V.

¶20. Pleasant finally contends that the circuit court erroneously allowed the State to "raise the issue" of his alleged gang activity. Specifically, he complains about questions regarding the "tear drop" tatoos under his eyes as well about his membership, and that of Robinson, in a gang. He charges that the State introduced the evidence for its prejudicial effect.

¶21. This Court has found that evidence of gang affiliation is admissible to show motive and intent pursuant to Miss. R. Evid. 404(b), provided that the circuit court weighed the probative value of the evidence versus the danger of unfair prejudice as required by Miss. R. Evid. 403. *Hoops,* 681 So. 2d at 530-531. The circuit court, ruling without the benefit of *Hoops*, found that the evidence fell within the exception of Rule 404(b), making it admissible to show motive, opportunity, intent, preparation and plan. Further, he cautioned the defense to be careful so as to avoid the probative value of the evidence being outweighed by its "obvious potential" prejudicial effect. There is no merit, therefore, to the assignment of error.

VI.

¶22. Looking at the evidence in a light most favorable to the verdict, we find that there is substantial credible evidence supporting the jury's finding that Pleasant was guilty of capital murder. Further, there is no merit to Pleasant's assertion that the State was allowed to change its theory of the case in mid-trial or that mention of the co-defendants' gang activity was unfairly prejudicial. Accordingly, we affirm the circuit court's order denying Pleasant's motion for a new trial.

**¶23. CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. APPELLANT IS GIVEN CREDIT FOR TIME SERVED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. Detective Stanley Vance testified that from the time Pleasant was brought in until he gave his statement, he did not smell alcohol on his breath or otherwise see any indication that Pleasant was intoxicated.