# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-01788-SCT

*JOHN WAYNE JEFFERSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/29/2000 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | WALTHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GUS GRABLE SERMOS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: |
| | BILLY L. GORE |
| DISTRICT ATTORNEY: | DUNNICA O. LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/14/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/7/2002 |

**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. John Wayne Jefferson ("Jefferson") was tried in absentia on the charges of possession of more than one ounce of marihuana with intent to distribute and possession of a firearm by a felon. He was convicted of possession of the marihuana and the firearm. He was later taken into custody and sentenced as a habitual offender to three years, enhanced to six years, in the custody of the Mississippi Department of Corrections (MDOC) for marihuana possession and to three years for firearm possession, to run consecutively with the sentence for possession. Jefferson was additionally ordered to pay $11,000.00 in fines and court costs. Jefferson contends that the trial court erred in conducting his trial in his absence and appeals to this Court. We find that Jefferson voluntarily and deliberately absented himself from trial; and therefore, we affirm the trial court. In doing so, we merely carve out a narrow, but limited, exception to ***Sandoval v. State***, 631 So. 2d 159 (Miss. 1994) and its progeny.

¶2. John Wayne Jefferson ("Jefferson") was indicted by the Walthall County Grand Jury in 1999. The indictment charged Jefferson with unlawful possession of marihuana with the intent to distribute in violation of Miss. Code Ann. § 41-29-139 (2001) and possession of a firearm by a convicted felon in violation of Miss. Code Ann. § 97-37-5 (2000). The indictment was later amended to include a charge of recidivism under Miss. Code Ann. § 99-19-81 (2000). Counsel was appointed for Jefferson, and a trial date was set for March 20, 2000. Jefferson did not appear for trial on that date. A warrant was issued for his arrest, and the trial was continued until the next day. Again, Jefferson did not appear, and the trial was continued until March 22, 2000.

¶3. On March 22, 2000, Jefferson did not appear, and the judge held a hearing in chambers. During these proceedings, it was determined that Jefferson had not been admitted as a patient to any of the local hospitals and that his attorney, Gus G. Sermos, had made all reasonable efforts to have him present at trial. In making these determinations, Sermos detailed his interaction with Jefferson. First, it was noted that Jefferson had been present for arraignment, although this was waived. Further, Jefferson was present at his omnibus hearing on November 5, 1999, at which time his trial was set for March 20, 2000. Sermos then noted that he had spoken with Jefferson several times from October, 1999, to early February, 2000, either in person or via telephone. He attempted to reach Jefferson via telephone beginning on March 1, 2000, to discuss trial strategy. Failing to reach Jefferson, Sermos sent a letter on March 13, 2000, which read:

> Dear John Wayne, I have been trying to call you fro the past two weeks, but no one answers the telephone. Your trial date is set for Monday, March 20, 2000, which is next week. Please call me immediately so we can prepare for trial. If I do not answer the telephone, call me back every hour or two until you reach me or call me at night. My home phone number is 684-9523. The final day for you to plead guilty and avoid the uncertainties of trial, is this Friday at two P.M., at the courthouse in Walthall County. Please call me now. Very truly yours, Gus G. Sermos.

¶4. On March 14, 2000, Jefferson called Sermos, and they discussed his case for approximately thirty minutes. During this call, Sermos informed Jefferson that they needed to get together "immediately to review the case strategy and also about two potential witnesses [Jefferson] had." He also told him that the plea date had changed to March 16, and asked him to show up whether he wanted to plead guilty or not so they could talk. Jefferson did not come to court on that date. On March 19, 2000, Sermos tried to telephone Jefferson. The number he called was the same number he had used previously to reach the defendant, which was apparently a cousin's home. He did not reach anyone that evening. Sermos, again, tried to telephone Jefferson on the morning of his first trial date, to no avail. He did speak with the cousin, who told him that she had telephoned Jefferson's mother in Picayune to let her know that Sermos was looking for Jefferson. After Jefferson did not appear in court on March 20, Sermos continued to call each day and spoke with the same woman. She informed him that she had not seen, nor heard from Jefferson since the previous week. Following these proceedings, the trial judge found that Jefferson had waived his right to be present for trial and ordered that Jefferson be tried in absentia.

¶5. Jefferson was not present at any part of his trial on March 22, 2000. The jury returned guilty verdicts on the charges of marihuana possession and firearm possession by a convicted felon. Sentencing took place in June of 2000, with Jefferson present following his arrest in Pearl River County. In July, Jefferson filed a motion for new trial. At the hearing on this motion, testimony was presented by Andrea Dillon. Dillon stated that he was a long-time acquaintance of Jefferson and that Jefferson had told him that he was "going to run." The defense did not question Dillon and offered no explanation for Jefferson's absence to counter Dillon's testimony. The trial court denied Jefferson's motion. Aggrieved, Jefferson brings this appeal.

## DISCUSSION

¶6. Jefferson raises only one issue on appeal. He contends that the trial court erred and abused its discretion in proceeding to trial in the absence of the defendant, and that as a result he was thereby prejudiced. The issue presented is a question of law, which this Court reviews de novo. ***Attorney General v. Interest of B.C.M.***, 744 So.2d 299, 301 (Miss. 1999).

### WHETHER THE TRIAL COURT ERRED IN PROCEEDING IN THE ABSENCE OF

**JEFFERSON?**

¶7. The recent trend of this Court has been not to allow felony trials in absentia. *See generally Simmons v. State*, 746 So. 2d 302, 306 (Miss. 1999); *Jackson v. State*, 689 So. 2d 760 (Miss. 1997); *Villaverde v. State*, 673 So. 2d 745 (Miss. 1996); *Banos v. State*, 632 So. 2d 1305 (Miss. 1994); *Sandoval v. State*, 631 So. 2d 159 (Miss. 1994). Jefferson urges this Court to continue that trend and to reverse his conviction. The Attorney General, however, argues that this Court take the time to revisit the now overruled *Samuels v. State*, 567 So. 2d 843 (Miss. 1990). *Samuels* held that a criminal defendant who voluntarily flees the courthouse, waives his right to be present at his felony trial, and further, that it is not an abuse of discretion to deny a continuance.

¶8. Jefferson cites to Supreme Court case law and Miss. Code Ann. § 99-17-9 in support of his objection to the trial proceeding without his presence. Section 99-17-9 states:

> In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court, in his absence, if he be in custody and consenting thereto. If the defendant, *in cases less than felony*, be on recognizance or bail or have been arrested and escaped, or have been notified by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or be in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment final and sentence be awarded as though such defendant were personally present in court.

Miss. Code Ann. § 99-17-9 (2000) (emphasis added). Recent case law has found that this statute is not in violation of the Constitution, *Jackson*, 689 So. 2d at 763 (Miss. 1997) (citing *Williams v. State*, 103 Miss. 147, 60 So. 73 (1912)), and further, that this statute prohibits trying a defendant in absentia when he or she has not voluntarily consented to such a proceeding. *See generally Simmons*, 746 So. 2d 302; *Jackson*, 689 So. 2d 760; *Villaverde*, 673 So. 2d 745; *Banos*, 632 So. 2d 1305; *Sandoval*, 631 So. 2d 159.

¶9. Jefferson contends that his case closely mirrors other cases where this Court reversed convictions obtained after trials that proceeded in the absence of the defendant. In *Simmons*, the defendant was not present on the morning of trial when the judge was preparing to voir dire the jury. 746 So. 2d at 304. Defense counsel requested a moment to see if his client was in the courthouse somewhere. *Id*. While he did not locate his client, counsel did find the defendant's mother who informed him that Simmons thought trial was set for that afternoon. *Id*. Simmons did arrive before defense counsel began his voir dire of the jury. *Id*. at 305. *Jackson* presented two defendants who arrived late to trial due to a brawl between them earlier that day. 689 So. 2d at 763. Alvin Jackson did arrive during jury selection. *Id*. Larry Jackson arrived later, during cross-examination of the State's second witness. *Id*. *Villaverde* is closer to the case at bar in that he did not appear at any part of the trial. There is, however, a question regarding Villaverde's notice of trial. 673 So. 2d at 746. This Court detailed communications regarding the trial to Villaverde as provided by Earl Stegall, defense counsel, to the trial court:

> Stegall's secretary had given Villaverde notice to appear in court, and Stegall himself had also called and left messages on the answering machine at the number which Villaverde left as his residence or where persons could contact him. This phone number belonged to his girlfriend's telephone. The girlfriend's number was the only one supplied by Villaverde when he left after posting bond. Stegall also stated that four days prior to trial, Villaverde had called him and left a message on his answering

machine stating that he would be there for trial. On the day before the trial, the bail bondsman talked to Villaverde's girlfriend, who told him that Villaverde was on his way to Mississippi for trial. Stegall admitted in that hearing that Villaverde "in fact, had actual and constructive notice of the hearing today."

Despite this extensive communication, there appears to be no direct communication regarding the trial date. As noted in a special concurrence by Justice Pittman, there was "insufficient evidence that Villaverde had proper notice of trial." *Id*. at 748 (Pittman, J., specially concurring).

¶10. In *Banos*, the two defendants had appeared in court with their attorney and entered not guilty pleas. 632 So. 2d at 1307. Subsequently, defense counsel waived their presence at a motion to suppress hearing. *Id*. Neither defendant appeared at any portion of the trial, except that Efren Andrade did appear a month later for sentencing. *Id*. Appellate counsel for both defendants conceded in his brief "that apparently both defendants willfully failed to appear in court on the day of trial after numerous efforts were made by counsel and the bondsman." *Id*. at 1308.

¶11. *Sandoval* also bears a close resemblance to the case at bar. Sandoval appeared at his preliminary hearing, and was present in his attorney's office the day before trial. 631 So. 2d at 160. Sandoval never presented himself during trial, and there is no discussion by this Court of whether he attended any portion of his sentencing hearing. *Id*. at 161.

¶12. In *Sandoval*, *Banos*, and *Villaverde*, the defendants were not present during any part of the trial. Jefferson also notes that in these cases the judges denied a continuance. While Jefferson claims this is another similarity his case shares with the others, that is not the case, as Jefferson's attorney was granted two continuances prior to the denial of this third request. The trial courts in *Villaverde* and *Sandoval* made findings that the defendants had voluntarily absented themselves from the proceedings.

¶13. Upon denying the defendants' request for a continuance, the trial court in *Banos* stated that:

[The defendants] are deliberately not being here because they don't want to be here, obviously fearing what result may come about if there's a trial. I can't tolerate this situation. If I grant a continuance in this case, every defendant on the docket might as well start running because he's never going to go to trial. He'll get his case passed over and nothing will ever happen to him because all he's got to do is just stay away from the courthouse. I can't tolerate this situation, particularly, as I say, when I've got two defendants who as a matter of fact, and I find that they both knew they had to be here for motions and trial, and they are deliberately staying away from here.

*Banos*, 632 So. 2d at 1308. The trial court's warning is closer to becoming a reality, as evidenced by the case before us. The trial court below stated:

This is the third day of the term. To date, this is the third defendant. The first two were Janice Mallard, Cause Number 99-83B (2), who was tried yesterday under the same identical circumstances; the second was Rhonda Fields, Cause Number 99-95B.

There is a trend among the criminal defendants that they are voluntarily and intentionally not showing up for trial for the specific purpose of avoiding prosecution. This puts the Court in a bind. If the Court, upon finding out that they do not want to accept a plea or if they want to plead and if they want a trial, if I increase their bond to insure that they will be here for trial, then they claim that their constitutional

rights are being violated. And if they absent themselves from trial, there is no doubt whatsoever that when they are arrested they are going to claim that their constitutional rights are being violated.

* * * * *

We can't let the defendants-and it's a trend in this county, as evidenced by these three cases. We can't let this happen. It will undo our whole justice system.

¶14. Recognizing this trend, we deem it prudent to carve out an exception to our holding in *Sandoval*. We find that under the facts presented by the case at bar that the trial court did not err in trying Jefferson in absentia. Jefferson was present for his arraignment, though it was waived, at which time his trial was set. He was again present at his omnibus hearing. Following this, Jefferson spoke directly with his attorney numerous times, and specifically just a week prior to his trial date. These facts demonstrate that Jefferson was well aware of the date his trial was set. Beyond that, the most glaring evidence of Jefferson's deliberate intent to evade justice was the unrefuted testimony of Andrea Dillon, his long-time acquaintance, that Jefferson had informed him of his plan to run and avoid trial. Thus, as the trial court found, Jefferson "knowingly, willingly, freely, voluntarily and intentionally...absented himself from a trial in this cause without reason or justification after receiving proper and direct notification of the date, place and time of his trial, all for the specific purpose of escaping prosecution."

¶15. The trial court also found that Jefferson suffered no prejudice due to his willful absence. The State asserts that this finding is supported by the fact that while Jefferson was indicted for possession of 119 grams of marihuana with the intent to distribute, he was only found guilty by the jury of the lesser-included offense of simple possession. We agree that Jefferson suffered no prejudice due to his absence.

¶16. Jefferson also asserts that Article 3, Section 26 of the Mississippi Constitution guarantees his right to be present at his trial, to be heard at his trial, and to be confronted by the witnesses against him, that the Sixth Amendment to the United States Constitution guarantees his right to an impartial jury and to be confronted with the witnesses against him, and that the Fourteenth Amendment to the United States Constitution guarantees that he shall not be deprived of his liberty without due process of law.

¶17. There is a long history of precedent for the constitutionality of trial in absentia under § 99-17-9 clearly established by this Court. *See* ***Thomas v. State***, 117 Miss. 532, 78 So. 147 (1918); ***Williams v. State***, 103 Miss. 147, 60 So. 73 (1912). As for Jefferson's contentions that his being tried in absentia violates the U.S. Constitution, there is no support for this claim. The United States Supreme Court has held that it is proper to continue a trial where the defendant has fled *after trial has commenced*. ***[Taylor v. United States](#)***, 414 U.S. 17, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973). As for cases where the defendant has not been present at any point during the trial, while the United States Supreme Court has ruled that proceeding with trial in such a case is not allowed under Rule 43 of the Federal Rules of Criminal Procedure, it specifically refrained from deciding whether such action would violate the Constitution. ***[Crosby v. United States](#)***, 506 U.S. 255, 113 S. Ct. 748, 122 L. Ed. 2d 25 (1993).

## CONCLUSION

¶18. By our ruling today, we do not overrule *Sandoval* and its progeny; rather, we carve out an exception based on willful, voluntary and deliberate actions by a defendant in avoiding trial, such as those presented here. Jefferson was clearly aware of the date of his trial, he was granted two continuances, and evidence

was presented that he had expressed a clear intention to evade trial. Thus, we find no error in the trial court's decision to try Jefferson in absentia. The judgment of the Walthall County Circuit Court is affirmed.

¶19. **COUNT I: CONVICTION OF UNLAWFUL POSSESSION OF MARIHUANA AND SENTENCE OF THREE (3) YEARS, ENHANCED TO SIX (6) YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**COUNT II: CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SAID SENTENCES ARE FOR A TOTAL OF NINE (9) YEARS TO BE SERVED DAY FOR DAY, WITHOUT BENEFIT OF EARLY RELEASE OR PAROLE. APPELLANT SHALL PAY A FINE OF $6,000 FOR POSSESSION OF MARIHUANA AND $5,000 FOR POSSESSION OF A FIREARM BY A CONVICTED FELON, FOR A TOTAL OF $11,000 PLUS COURT COSTS AND ATTORNEY'S FEES.**

**PITTMAN, C.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.**