# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00201-SCT

*AARON FINLEY, a/k/a AARON DEWAYNE FINLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/09/96 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SUSANNE A. MERCHANT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEFFREY KLINGFUSS |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/17/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/7/99 |

**BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Aaron Finley (hereinafter "Finley") was indicted on April 12, 1996, by the grand jury of Lauderdale County for the November 16, 1994, murder of George Monsour, during the commission of an armed robbery in violation of Miss. Code Ann. § 97-3-19(2)(e) (Supp. 1988). A jury was impaneled and Finley was put to trial on the indictment on November 25, 1996, and December 2, 1996. Judge Larry Eugene Roberts presided at the jury trial where Finley was found guilty of capital murder. Thereafter, the jury heard evidence and arguments in aggravation and mitigation of the sentence and the jury returned a verdict of life imprisonment without the possibility of early release.

¶2. A Motion for a New Trial or JNOV was filed on December 16, 1996. The Motion was overruled on February 5, 1997. The Notice of Appeal was filed on February 5, 1997, asserting the following issues:

### I. WHETHER THE TRIAL COURT MADE REVERSIBLE ERROR IN REFUSING

**FINLEY'S REQUESTED JURY INSTRUCTION CONCERNING PRIOR INCONSISTENT STATEMENTS?**

**II. WHETHER THE TRIAL COURT ERRED IN ALLOWING A WITNESS FOR THE PROSECUTION TO REMAIN IN THE COURTROOM DURING TRIAL PROCEEDINGS?**

**III. WHETHER THE TRIAL COURT ERRED IN ITS RULINGS ON THE LEGAL SUFFICIENCY OF THE EVIDENCE OR THE WEIGHT OF THE EVIDENCE?**

**IV. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL WHEN ONE-THIRD OF THE DEFENSE TEAM WAS INCAPACITATED, THEREBY CREATING A VOID IN THE DEFENSE STRATEGY AND INEFFECTIVE ASSISTANCE OF COUNSEL?**

**V. WHETHER THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF BAD ACTS BEYOND THE ACTUAL CONVICTION TO BE ADMITTED?**

**VI. WHETHER THE TRIAL COURT ERRED IN OVERRULING <u>BATSON</u> CHALLENGES?**

## <u>STATEMENT OF THE FACTS</u>

¶3. On November 16, 1994, Willie Davis went to the home of George Monsour, the victim, and pretended to be interested in purchasing Monsour's car, an antique Chevrolet Impala. Davis agreed to purchase the car for $1,800.00 and he left to supposedly get the money. He returned to the Monsour home and Mr. Monsour went with Davis for a test drive. They left the Monsour home between 11:00 and 12:00. Mrs. Monsour never saw her husband again.

¶4. Monsour's body was found in Warren Lake in Lauderdale County in the early hours of November 17, 1994. Willie Davis confessed to the crime and led the police to the body. At the crime scene, the police found many personal items of Monsour's scattered around the site of the murder. The police also found the Chevrolet Impala on a vacant lot.

¶5. At Finley's trial, Rita Crane, a sister of one of the investigating officers, testified that she saw the Impala with Monsour and three black males on Interstate 20 on November 16, 1994, around noon. She identified Davis as the driver of the vehicle and Finley as one of the passengers in the vehicle. She further testified that she knew Monsour but did not realize at the time that he was in the vehicle.

¶6. Davis testified that he and Finley drove Monsour to Warren Lake. He further testified that while they were driving down the interstate, he and Finley stopped to switch who was driving the car. It was at this time, while they were outside of the car and out of Monsour's hearing range, that they decided to rob Monsour. He stated that Finley parked the car at Hillcrest and eventually forced Monsour by gunpoint down to Warren Lake. Davis testified that it was at this point that Finley beat, kicked and eventually drowned Monsour. Davis stated that he took Mr. Monsour's wallet while Finley was holding Monsour's head under the water. Both Davis and Finley took money from Monsour. After the crime was completed, Davis and Finley drove back to Meridian.

¶7. Davis and Finley ended up together again that evening . Many people were in and out of the vehicle while Davis and Finley drove around Meridian. Around 12:00 a.m. Davis and Finley picked up Tammy Seals and Wakisha Lewis, their girlfriends, and headed over to R.B. Smith's house. It was at this time that Davis and Finley parked the vehicle because they were told that the police were looking for it. They left Smith's house and traveled by taxi to a motel with their girlfriends where they all spent the night. Both room charges were paid with cash taken from Monsour. On the morning of November 18, two days after the crime was committed, Finley went to the Meridian Police Department to turn himself in.[1]

## DISCUSSION OF THE ISSUES

### I. WHETHER THE TRIAL COURT MADE REVERSIBLE ERROR IN REFUSING FINLEY'S REQUESTED JURY INSTRUCTION CONCERNING PRIOR INCONSISTENT STATEMENTS?

¶8. Finley asserts in two sub-issues that the trial court erred in refusing jury instructions D-3 and D-2. However, as the analysis for these two issues are similar, they will be considered together.

¶9. The State argues that because Finley failed to object to the denial of jury instructions D-3 and D-2, this issue is procedurally barred from review by this Court. The State finds its authority for this proposition in *Nicholson ex rel. Gollott v. State*, 672 So. 2d 744, 752 (Miss. 1996). However, this Court recently addressed this issue in *Duplantis v. State*, 708 So. 2d 1327 (Miss. 1998) where we stated that "[a] lthough in dicta we indicated that we could impose a procedural bar, we did not intend to overrule existing caselaw and therefore require litigants to object to the denial of instructions that they themselves have offered."*Duplantis v. State*, 708 So. 2d 1327, 1339 (Miss. 1998). Prior precedent of this Court makes it clear that an issue involving the denial of a requested jury instruction:

> . . . is procedurally preserved by the mere tendering of the instructions, suggesting that they are correct and asking the Court to submit them to the jury. This in and of itself affords counsel opposite fair notice of the party's position and the Court an opportunity to pass upon the matter. When the instructions are refused, there is no reason why we should thereafter require an objection to the refusal unless we are to place a value upon redundancy and nonsense.

*Duplantis*, 708 So. 2d at 1340 (*quoting Carmichael v. Agur Realty Co.,* 574 So. 2d 603, 613 (Miss. 1990)). As such, this Court agrees with the holding of *Duplantis* and finds that Finley is not procedurally barred from review of this assignment. He only needed to tender his suggested jury instruction in order to preserve review. Thus, Finley's first issue will be discussed on the merits.

¶10. Finley first argues that jury instruction D-3 should have been granted by the trial court, and its failure to do so was reversible error. The proposed instruction at issue which was denied by the trial court was basically an impeachment instruction. It reads as follows:

### Jury Instruction No. 3

The testimony of a witness or witnesses may be discredited or impeached by showing that on a prior occasion they have made a statement or testified in a manner which is inconsistent with or contradictory to their testimony in this case. In order to have this effect, the inconsistent or

contradictory prior statement or testimony must involve a matter which is material to the issues in this case.

The prior statement or testimony of the witness or witnesses can be considered by you only for the purpose of determining the weight or believability that you give to the testimony of the witness or witnesses that made them. You may not consider the prior statement or testimony as proving the guilt or innocence of the defendant.

Finley argues that Rita Crane, witness for the prosecution, was a key witness and that her testimony at his trial contained new facts never revealed before. Furthermore, he asserts that her testimony was inconsistent and contradictory to statements she had made before and during trial. As such, Finley believes that an impeachment instruction was warranted and the trial court erred in refusing the proposed instruction. He supports this argument with the case of *Ferrill v. State*, 643 So. 2d 501 (Miss. 1994).

¶11. In *Ferrill v. State*, the Court held that the lower court erred in refusing to grant a proposed jury instruction. That instruction contained language concerning the credibility of impeached witnesses which is nearly identical to the language of proposed instruction D-3 in the case sub judice. In *Ferrill*, the defense characterized prior statements of a prosecution witness as inconsistent with the trial testimony. Accordingly, on appeal, the defendant/appellant argued that the trial judge should have submitted an impeachment instruction to the jury which he proffered at trial. That proposed instruction stated:

**Jury Instruction A-7**

The Court instructs the jury that the testimony of a witness may be discredited or impeached by showing that on a prior occasion they have made a statement which is inconsistant [sic] or contradictory statement must involve a matter which is material to the issues in this case.

A prior statement of the witness or witnesses can be considered by you only for the purpose of determining the weight or believeability [sic] that you give to the testimony of the witness or witnesses that made them. You may not consider the prior statements as proving guilt or innocence of the accused.

*Ferrill*, 643 So. 2d at 504-05.

¶12. As is readily apparent, there is little difference between the language of the proposed instruction in the case sub judice, and the language of the instruction which this Court held as error for the lower court to refuse to submit to the jury in *Ferrill*. However, the facts of the case sub judice do not warrant submission of the impeachment instruction to the jury. There was no prior inconsistent statement read to Crane while she was on the witness stand which was directly contradictory to her testimony at Finley's trial. In fact, the testimony that the defense harped on as being a prior inconsistent statement was Crane's testimony at the trial of Davis. However, it is quite evident from the record that Crane was not asked any specific questions about Finley as he was not the one on trial. Thus, the new testimony brought up at Finley's trial was not an inconsistency, but merely an honest answer to a first-asked question. Furthermore, all other alleged inconsistencies were fully explained in re-direct and were not contradictions or inconsistencies at all.

¶13. Consequently, the jury should not have been instructed that Crane's testimony could be impeached by a prior inconsistent statement and that such statement could be considered by the jury in determining the

credibility or believability of Crane's testimony. The lower court's denial of proposed instruction D-3 did not have the effect of prejudicing the defense.

¶14. In *Ferrill*, the Court discussed the standard which the trial court should follow when confronting the issue of the propriety of refusing a proffered jury instruction. The Court held that:

> The refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper, only if the trial court--and this Court on appeal--can say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inferences which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction.

*Ferrill*, 643 So. 2d at 505 (*quoting McGee v. State*, 608 So. 2d 1129, 1134 (Miss. 1992) (*quoting Hill v. Dunaway*, 487 So. 2d 807 (Miss. 1986))).

¶15. There was sufficient evidence which indicated that Finley drove down the interstate with Monsour and later beat him to death. Taking the evidence in the light most favorable to Finley, and considering all reasonable favorable inferences which may be drawn in his favor, the writer still finds that a hypothetical, reasonable jury could not find the facts as suggested by the defense in the jury instruction at issue--that Crane's trial testimony was not believable. Therefore, we conclude that it was not improper for the trial court to refuse proposed impeachment instruction D-3. This issue is without merit.

¶16. Finley also asserts that the trial court erred in refusing jury instruction D-2 which stated the following:

### Jury Instruction No. 2

> The Court instructs the jury that: If you believe from the evidence that any witness in this case has wilfully and corruptly sworn falsely as to any material thing or matter inquired of on the trial of this case, you have a right to disbelieve and disregard the whole and entire evidence of such witness.

He argues that this instruction is similar to an accomplice instruction, and in accordance with the holding in *Ferrill*, should have been given. The instruction addressed in *Ferrill* stated:

### Jury Instruction A-19

> The Court instructs the Jury that the testimony of the alleged accomplices, . . should be weighed with great caution and the Jury may disbelieve their testimony altogether if they believe it untrue, the Jury being the sole judges of the credibility of the witnesses.

*Id.* at 506.

¶17. In *Ferrill*, the Court stated that "[a]s a general rule a trial judge should not hesitate to grant the cautionary instruction when the State is relying upon the testimony of co-conspirators." *Id.* at 506 (*quoting Derden v. State*, 522 So. 2d 752, 754 (Miss. 1988)). However, the granting of a cautionary instruction regarding the testimony of an accomplice is discretionary with the trial judge. *Van Buren v. State*, 498 So. 2d 1224, 1229 (Miss. 1986). Finley asserts that intended instruction would have assisted the jury in

weighing the evidence submitted in the case, especially since the only testimony linking him to the charged crime consisted of that of Davis.

¶18. In the case sub judice, the testimony of Davis was not the only evidence linking Finley to the crime of murder and robbery. Thus, the instruction did not have to be given by the trial judge. Furthermore, although the proposed instruction D-2 was refused by the lower court judge, an accomplice instruction was duplicated in instruction C-12, which was given to the jury. Instruction C-12 stated as follows:

### Jury Instruction No. C-12

Willie Davis is an accomplice in this case and the testimony of an accomplice is to be considered and weighed with great care, caution, and suspicion. You may give it such weight and credit as you deem it is entitled.

In light of this instruction, it is evident that Finley received an instruction that he desired, and as such, this issue is without merit.

### II. WHETHER THE TRIAL COURT ERRED IN ALLOWING A WITNESS FOR THE PROSECUTION TO REMAIN IN THE COURTROOM DURING TRIAL PROCEEDINGS?

¶19. Finley contends that the trial court erred in allowing Wakisha Lewis to testify in the State's rebuttal case as she had remained in the courtroom for much of the testimony of the State's case in chief. He believes that Lewis was able to tailor her testimony to that of Davis and conform her testimony so that it would directly contradict Cecil Pruett's testimony. Finley asserts that this was a violation of Mississippi Rules of Evidence, Rule 615 from which his defense suffered prejudice.

¶20. Rule 615 of the Mississippi Rules of Evidence reads:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

¶21. As noted in the case of ***Douglas v. State***, 525 So. 2d 1312 (Miss. 1988), the aim in the sequestration of witnesses rule is twofold: (1) "it exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses" and (2) "it aids in detecting testimony that is less than candid." ***Douglas v. State***, 525 So. 2d 1312, 1316 (Miss. 1988) (*quoting* ***Geders v. United States***, 425 U.S. 80, 87 (1976) ). The rule applies to rebuttal witnesses as well as witnesses who have testified, or could have testified, on the case-in-chief. ***Douglas***, 525 So. 2d at 1316.

¶22. Regarding scope of review, this Court will not per se reverse a trial court for failing to order a mistrial or to exclude testimony after a witness exclusion rule violation. The resultant degree of prejudice to the defendant must first demonstrate that the trial court abused its discretion. ***Id.*** at 1317. As indicated by the mandatory language of the rule, the trial court does not have any discretion in its application; the court must apply it when a party invokes it. ***Id.*** at 1316.

¶23. Once a witness has violated the rule, however, the remedy lies within the court's discretion. ***Id.*** at 1317 (*citing **United States v. Warren***, 578 F.2d 1058, 1076 (5ᵗʰ Cir. 1978)). Remedies may include prospectively excluding the witness where prejudice will otherwise ensue; striking the witness's testimony where connivance gave rise to the testimony; striking the witness's testimony where the testimony gave rise to prejudice; or, most appropriately, allowing the other party to subject the witness to a "full-bore cross-examination" on the facts of the rule violation. ***Id.*** (*citing **United States v. Jimenez***, 780 F.2d 975, 981 (11ᵗʰ Cir. 1986); ***United States v. Blasco***, 702 F.2d 1315, 1327 (11ᵗʰ Cir. 1983)). The court may also instruct the jury that it may consider the rule violation when the jury evaluates the violating witness's credibility. ***Id.***

¶24. In the case sub judice, the trial court held a hearing outside the presence of the jury to ascertain what the witness may have heard and whether Finley suffered prejudice. It was determined that Lewis did testify in the case-in-chief and then remained in the courtroom for some time. However, when the State realized she was going to be a rebuttal witness concerning the testimony of Cecil Pruett she was removed from the courtroom. She was not present during any of Pruett's testimony. Defense counsel was given the opportunity to fully cross-examine Lewis before the jury and the trial judge determined that because Lewis was not present during Pruett's testimony, there was no resulting harm to Finley. This was the appropriate remedy. According deference to the trial court's inquiry, this Court holds that the trial court did not err and that this assignment of error is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN ITS RULINGS ON THE LEGAL SUFFICIENCY OF THE EVIDENCE OR THE WEIGHT OF THE EVIDENCE?

### A. Weight of the Evidence

¶25. Finley also argues that the verdict of the jury was against the overwhelming weight of the evidence. Here again he says that there was no credible evidence which would tend to show that he had robbed and killed Monsour and that the jury's verdict was for that reason against the overwhelming weight of the evidence.

¶26. This Court will reverse the jury's findings " 'only where the evidence is such that reasonable and fair-minded jurors could only find the defendants not guilty.' " ***Jackson v. State***, 689 So.2d 760, 766 (Miss.1997)(*quoting **Heidel v. State***, 587 So.2d 835, 838 (Miss.1991)). In determining "'whether or not a jury verdict is against the overwhelming weight of the evidence, 'this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.'" ***Coleman v. State***, 697 So.2d 777, 788 (Miss.1997) (*quoting **Nicolou v. State***, 612 So. 2d 1080, 1083 (Miss. 1992)); ***Herring v. State***, 691 So.2d 948, 957 (Miss.1997); ***Jackson***, 689 So.2d at 766. "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." ***Pleasant v. State***, 701 So.2d 799, 802 (Miss.1997); ***Herring***, 691 So.2d at 957; ***Benson v. State***, 551 So.2d 188, 193 (Miss.1989)(*citing **McFee v. State***, 511 So.2d 130, 133-34 (Miss.1987)).

¶27. Accepting as true the evidence that supports the jury's verdict, there is no merit to Finley's assignment of error. Rita Crane testified that she was riding on I-20 at 12:40 on November 16, 1994, as she saw Finley, Davis, an elderly white male and another black male in a 1963 or 1964 Chevrolet Impala with an antique tag on it. This tag was just like the antique tag found on Mr. Monsour's car. She stated that she had

no doubt that it was Finley. She further stated that the vehicle was heading in the direction of Highway 45, the direction of the crime scene. Furthermore, she saw the car coming back toward Meridian from the direction of the murder scene with the black males in the car. Mr. Monsour was no longer in the car.

¶28. Secondly, Kay Monsour testified that she saw the Chevrolet Impala parked at the entrance of the murder scene within one hour after Crane saw the car heading in that direction.

¶29. Furthermore, Finley's fingerprints were found all over the stolen car. Although he now asserts that he never had control over the vehicle, Finley's fingerprints were found all over the driver's side of the vehicle. He was also seen riding in the stolen Impala later during the evening. Seals and Lewis testified that they, along with Finley and Davis, arrived at R.B. Smith's house on the evening of November 16th. Ricky Graham stated that it was at this time that Finley and Davis learned that the police were looking for the Chevrolet Impala. He added that Finley appeared quite nervous upon learning this information. He also testified that upon learning that the police were looking for the vehicle, Davis went to move and park the car while Finley called a cab.

¶30. It was at this point that Finley, Davis, Seals and Lewis went to a local motel where Finley registered in a different name than his own. Finley also checked into a different motel on the 17th under a different name. On the morning of the 18th, after learning that the police were looking for him in connection for the crime, he went to the police department.

¶31. It is also important to note, that all of this evidence corroborates the testimony of Davis who specifically names Finley as an accomplice in the murder and robbery of Monsour. The testimony of Davis is further strengthened by the testimony of Corey Pack. Pack stated at the trial that Finley told him that he had made Mr. Monsour "run it". Pack stated that the street terminology for "run it" is to rob someone. The testimony of Davis is also corroborated by the testimony of Lewis, who was his girlfriend at the time of the incident. She stated at trial that after Davis had been arrested she talked with him. She asked Davis whether or not he had committed the crime. Davis responded that he beat Mr. Monsour and Finley drowned him. Given the standard of review, the facts tending to support the jury verdict should be taken as true. This Court concludes that there was credible evidence to support a jury finding that Finley robbed and murdered Mr. Monsour.

## B. Sufficiency of the Evidence

¶32. Finley contends that the trial court erred in ruling that the evidence was legally sufficient to support a conviction of capital murder and that he is entitled, as a matter of law, to a reversal. He argues that the evidence is legally insufficient to support a conviction of both the murder and the underlying felony of robbery. "When reviewing the sufficiency of the evidence, this Court looks at the lower court's ruling `on the last occasion when the sufficiency of the evidence was challenged.'" *Ballenger v. State*, 667 So.2d 1242, 1252 (Miss. 1995) (*quoting* **Green v . State**, 631 So.2d 167, 174 (Miss 1994)). The last occasion upon which Finley challenged the sufficiency of the evidence was in his Motion for JNOV. Therefore, this Court is to consider all of the evidence presented throughout the course of the trial. "All evidence and inferences derived therefrom, tending to support the verdict, must be accepted as true, while all evidence favoring the defendant must be disregarded." *Ballenger* 667 So. 2d at 1252 (*citing* **Hart v. State**, 637 So.2d 1329, 1340 (Miss. 1994); *Clemons v. State*, 460 So.2d 835 (Miss. 1984)). "Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." *Wetz v. State*, 503 So.2d 803, 808 (Miss. 1987). Therefore, this Court will not disturb a jury's finding unless it is found that no reasonable and

fairminded hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. ***Ballenger***, 667 So. 2d at 1252-53.

¶33. Finley first argues that the jury instruction read to the jury concerning the underlying felony of robbery incorrectly stated the law. However, Finley failed to object to the granting of this particular jury instruction, thus his claim is procedurally barred. ***Walker v. State***, 671 So.2d 581, 596 (Miss. 1995). Without relaxing the bar, this Court also alternatively looks to the merits of Finley's claim.

¶34. The jury instruction stated the definition as ". . .willfully and unlawfully tak[ing] the personal property of [another], from the person or presence of [another] against his will, by force or threat of force." According to Miss. Code Ann. § 93-3-73, the crime of robbery is defined as, "[e]very person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery." Finley asserts that because the instruction given to the jury stated "force or threat of force" as an element of robbery instead of the correct element "by violence", the jury instruction was improper as it incorrectly stated the law. ***Williams v. State***, 667 So. 2d 15, 24 (Miss. 1996) (*citing **United States v. Robinson***, 700 F.2d 205, 211 (5th Cir. 1983)).

¶35. However, Mississippi case law has clearly used the two elements interchangeably. In ***Caldwell v. State***, 481 So. 2d 850 (Miss. 1985), the Court determined that to sustain a finding of robbery, the prosecution must have proved three elements: (1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his person or in his presence. ***Caldwell v. State***, 481 So. 2d 850, 853 (Miss. 1985) (*citing **Glenn v. State***, 439 So. 2d 678, 680 (Miss. 1983) (*quoting **Crocker v. State***, 272 So.2d 664, 665 (Miss. 1973))), vacated, 479 U.S. 1075 (1987). This Court also stated in ***Reed v. State***, 506 So. 2d 277 (Miss. 1987) that to sustain a finding of robbery under Miss. Code Ann. § 97-3-79, the State must prove the element of "force or putting in fear as a means of effectuating the intent. ***Reed v. State***, 506 So. 2d 277, 181 (Miss. 1987). Although § 97-3-79 is the statute for armed robbery, it is merely an extension of § 97-3-73. It is true that the most recent cases involving robbery and armed robbery require the "violent" taking of personal property. However, prior cases such as ***Reed*** and ***Caldwell*** have not been overruled. Therefore, the instruction given to the jury in the case sub judice is lawful and properly defined the elements required to convict Finley of armed robbery.

¶36. Finley also alleges that even if the instruction regarding robbery was proper, the State failed to prove that he participated in a robbery against Mr. Monsour. Finley argues that the State failed to show that he ever possessed or had control of any item belonging to Mr. Monsour. He argues that there is no evidence that he handled Mr. Monsour's wallet and its contents or the vehicle. Finley contends that he was merely a passenger in the vehicle on the evening of the incident. He states that his fingerprints only appear on the passenger side of the car and not on the driver's side of the car.

¶37. However, it was agreed and stipulated at trial that Finley's fingerprints were found on the trunk, driver's side fender, driver's side hood and driver's side door. This would strengthen the State's argument that Finley was in control of the vehicle stolen from Mr. Monsour. Furthermore, Davis, Finley's accomplice, testified that he and Finley rode around in the car with Mr. Monsour and while driving and switching drivers, Finley told Davis of his plan to rob the 79 year old victim. He further testified that the vehicle was driven to a secluded lake. Finley forced Mr. Monsour at gunpoint down to the lake where he beat him. He

eventually held Mr. Monsour's head under water until he was no longer alive. Mr. Monsour's car and wallet were taken. These facts, as told by Finley's accomplice, satisfy the elements of robbery and capital murder.

¶38. This Court has held that the uncorroborated testimony of an accomplice is sufficient to sustain a conviction. *Holly v. State*, 671 So. 2d 32, 40 (Miss. 1996) (*citing Foster v. State*, 639 So. 2d 1263, 1284 (Miss. 1996); *Culberson v. State*, 379 So. 2d 499, 503 (Miss. 1979); *Rich v. State*, 322 So. 2d 468, 469 (Miss. 1975)). Where there is slight corroborative evidence, the accomplice's testimony is likewise sufficient to sustain a verdict. *Ballenger v. State*, 667 So. 2d 1242, 1253 (Miss. 1995). This general rule is inapplicable only where the accomplice testimony is unreasonable, self-contradictory or substantially impeached. *Id.* The testimony of Davis concerning Finley's participation in the crime is not unreasonable, self-contradictory or substantially impeached. In fact, there is testimony that corroborated the facts as described by Finley's accomplice. Consequently, there is evidence in the record which is sufficient to support the verdict of the jury. It is clear that a reasonable, fairminded juror could find beyond a reasonable doubt that Finley was guilty of robbery and capital murder. Therefore, this issue is without merit.

¶39. Finley also asserts in this issue that the trial court erred in failing to declare a mistrial because of Crane's new testimony. In support of his argument, he cites *Flanagan v. State*, 605 So. 2d 753 (Miss. 1992), which deals with whether an accomplice's testimony is sufficient to convict a defendant, and has nothing whatsoever to do with this assignment of error. Consequently, Finley makes no real argument in support of this claim and cites no legal authority in support of this claim. As a result, this Court finds Finley has waived any error presented by this issue. *Holloman v. State*, 656 So. 2d 1134, 1141 (Miss. 1995) (*citing Magee v. State*, 542 So. 2d 228, 234 (Miss.1989) (argument abandoned or waived when no support offered on appeal)).

¶40. Although this issue is procedurally barred, it will also be addressed on the merits. Crane, called by the State, testified that November 16th, 1994, the day of the incident while driving on I-20, she passed Mr. Monsour's vehicle which contained Finley, two other black males, and an older white male later found to be Mr. Monsour. She also testified that a little later, while traveling up Highway 45 South, the same vehicle passed her. However, at this point in time the vehicle only contained three black males. This testimony about seeing the vehicle for a second time was not included in her statement taken by the police and provided to defense counsel during discovery.

¶41. The defense counsel objected and made a motion for mistrial outside the presence of the jury due to the State's discovery violation in failing to supplement Crane's statement with this additional information. The State responded that it had provided defense counsel with the only statement it had of Crane and that, although the prosecutor had spoken with her several times, he had not once been informed of this additional information. He further responded that it was at that very moment in Finley's trial that he learned of the information. The trial judge then allowed both the defense and the State to question Crane, outside the presence of the jury, about this new information. In fact, the trial judge asked Crane a few questions and finally determined that there was no discovery violation, basically overruling defense counsel's motion for a mistrial. The jury was brought back in and defense counsel had a thorough cross-examination of the witness.

¶42. Finley argues that the trial court erred in overruling his motion for a mistrial due to the prosecution's failure to supplement Crane's statement with the additional information. For several reasons, we agree with the State that this argument must fail.

¶43. Defense counsel impeached Crane's testimony by establishing that she did not mention the second sighting of Mr. Monsour's car in her statement to the police. Therefore, even assuming arguendo that the prosecution was previously informed by Crane of the additional information, Finley suffered no prejudice because his attorneys were able to attack Crane's credibility in front of the jury. *Beckwith v. State*, 707 So.2d 547, 578 (Miss. 1997).

¶44. Finley asserts that this discovery violation constitutes reversible error. However, this is not a case where the prosecution failed to provide defense counsel with written statements, reports or tapes. *McCaine v. State*, 591 So. 2d 833, 835-36 (Miss. 1991); *Tanner v. State*, 556 So. 2d 681, 682-84 (Miss. 1989); *Fuselier v. State*, 468 So. 2d 45, 55-56 (Miss. 1985). The situation in the case sub judice, on the other hand, involves an oral, unrecorded statement, not "tangible evidence" as in the above cited cases. *Fuselier*, 468 So. 2d at 56. *See also Moore v. State*, 508 So. 2d 666, 667-68 (Miss. 1987) (finding State's nondisclosure of oral inculpatory statement by defendant was not reversible error). This Court, in *Snelson v. State*, 704 So. 2d 452 (Miss. 1997), did state that it is reversible error for the prosecution to knowingly fail to inform the defense of unrecorded culpable statements. *Snelson v. State*, 704 So.2d 452, 459 (Miss. 1997). However, *Snelson* is distinguishable from this case in that the prosecution had no knowledge of Crane's additional information prior to trial. Her testimony was as much a surprise to the State as it was to Finley.

¶45. This Court is cognizant of the inclination of witnesses to be more truthful and open on the witness stand, than when enduring a pretrial interview. This Court does not find reversible error for every inconsistent, non-recorded statement made in open court. "Such inconsistences are better dealt with by searching cross examination and the determination whether to admit such evidence is better left to the sound discretion of the trial judge." *Beckwith v. State*, 707 So.2d 547, 578 (Miss. 1997).

¶46. Because defense counsel was allowed to impeach Crane's testimony on this additional information on cross-examination, any error committed by the prosecution in failing to supplement her written statement was harmless. Therefore, this assignment of error is without merit.

### IV. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL WHEN ONE-THIRD OF THE DEFENSE TEAM WAS INCAPACITATED, THEREBY CREATING A VOID IN THE DEFENSE STRATEGY AND INEFFECTIVE ASSISTANCE OF COUNSEL?

¶47. Finley asserts that when his defense team paralegal/investigator was hit by a car on the second day of trial, this destroyed the defense's trial strategy and rendered defense counsel temporarily ineffective.

¶48. The standard of review for ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 669 (1984). "The test to be applied is (1) whether counsel's overall performance was deficient and (2) whether or not the deficient performance, if any, prejudiced the defense." *Taylor v. State*, 682 So. 2d 359, 363 (Miss. 1996). The defendant has the burden of proving both prongs. *Taylor*, 682 So. 2d at 363. " The adequacy of counsel's performance, as to its deficiency and prejudicial effect should be measured by a 'totality of the circumstances.'" *Id.* However, there is a strong, yet rebuttable, presumption that the action by the defense counsel were reasonable and strategic. *Cole v. State*, 666 So. 2d 767, 775 (Miss. 1995). "In short, defense counsel is presumed competent." *Foster v. State*, 687 So. 2d 1124, 1130 (Miss. 1996). *See also Johnson v. State*, 476 So. 2d 1195, 1204 (Miss. 1985).

¶49. In the present case, defense attorney's paralegal was hit by a car while walking across the street to the courthouse after lunch. Finley contends that the injured person was an integral member of the defense team and possessed much information that was relevant to representing him. He asserts that one of the paralegal's main jobs during the trial was to talk to and prepare defense witnesses while court was in session and the witnesses were waiting to testify. He states that this was part of the defense's strategy and approach to the case. Finley believes that paralegal's abrupt unavailability after the trial had already started deprived him of a fair trial.

¶50. Finley further argues that co-counsel, Merchant, was shaken and upset from witnessing the incident. He asserts that she was deficient after her paralegal was injured and unable to assist for the remainder of the trial.

¶51. The trial court hearing of the facts and circumstances made findings in the record as follows:

> Ms. Cogdell is not a licensed attorney. I don't, in my opinion, see the necessity in granting a mistrial and rescheduling this case at this point. If it becomes apparent to me at some later point in the trial that there is some significant disadvantage to the defense due to her absence, I will reconsider.

The finding of the trial court and the facts in the record, reveal that Finley was not deprived of his right to effective counsel.

¶52. When the trial judge questioned defense counsel as to whether or not they could continue, Druhet responded, "Surely I could finish with this witness and see how things stabilize. I have got enough information because we did have consultation during the lunch break. I could finish with particular witness." Merchant responded," I have no doubt that tomorrow, and, I mean, even later on this afternoon, I'll be fine and able to continue." The trial judge further inquired as to whether defense counsel had all of the information that the paralegal had obtained in investigation, and Merchant responded that they had all of the information needed. Court reconvened with Druhet continuing the cross-examination of Crane and examinations by Druhet and Merchant of other witnesses.

¶53. "[T]his Court must determine based on the totality of the circumstances whether counsel's efforts were both deficient and prejudicial, thus necessitating a reversal." *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988) (*quoting Waedrop v. State*, 506 So. 2d 273, 275 (Miss. 1987)). The totality of the circumstances does not show that Finley was deprived of effective assistance of counsel when a paralegal was unable to participate in his trial. Both attorneys stated that they could proceed and had all information necessary to continue trial. There is no evidence in the record that they performed deficiently. The loss of a paralegal did not prevent his **two** attorneys from competently representing Finley, nor did it result in a prejudice to him. Therefore, this assignment of error is without merit.

### V. WHETHER THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF BAD ACTS BEYOND THE ACTUAL CONVICTION TO BE ADMITTED?

¶54. Finley asserts that the trial court improperly allowed the State to bring up his past arrests and juvenile incarceration as the information was not used for impeachment purposes but to prove aggravators. Finley supports this argument with the case of *Stringer v. State*, 500 So. 2d 928 (Miss. 1986), which states that "[i]n the sentencing phase of a capital murder trial, the state is limited to offering evidence that it relevant to one of the aggravating circumstances included in § 99-19-101." *Stringer v. State*, 500 So. 2d 928, 941

(Miss. 1986). However, Finley has left out what the Court opined immediately following this statement:

> However, the prior misdemeanor convictions were not introduced in evidence as an aggravating circumstance, but to impeach testimony regarding a mitigating circumstance, that the defendant had no prior significant criminal history. Thus, the introduction of the misdemeanor offenses was not error.

*Stringer*, 500 So. 2d at 941. Therefore, prior bad acts and convictions are admissible where the defense has put on a witness testifying about mitigating circumstances.

¶55. In the case sub judice during the penalty phase, Finley put on his father as to question him about his role as a father. His father's testimony basically stated that he was not involved in Finley's life. Through this witness, defense counsel elicited testimony to infer that Finley's lack of upbringing was the reason he was sitting in front of the jury being tried for capital murder.

¶56. On cross-examination the State sought to discredit this testimony. He asked Finley's father how many times he had to go to youth court because of his son. However, Finley's youth court records were not presented to the jury or admitted into evidence.

¶57. "Substantively, our law permits this sort of rebuttal evidence." *Hansen v. State*, 592 So. 2d 114, 148 (Miss. 1991). It is true that the prosecution had no right to present evidence of wrongs and bad acts to prove Finley's character or to show he acted in conformity therewith pursuant to Rule 404(b), but this was competent rebuttal evidence in the face of the showing Finley made on direct examination of this witness. *Hansen*, 592 So. 2d at 148 (*citing Simpson v. State*, 497 So. 2d 424, 428-29 (Miss. 1986); *Winters v. State*, 449 So. 2d 766, 771 (Miss. 1986)). This Court has held that when the defendant puts mitigating evidence before the jury during the penalty phase, the prosecution is allowed a counter-attack. *Cole v. State*, 525 So. 2d 365, 370 (Miss. 1987). "Such rebuttal evidence, offered to negate testimony about specific mitigation factors, is admissible." *Cole*, 525 So. 2d at 370. Such is the case today. Finley had offered in mitigation that he was practically abandoned as a child and had no one to properly raise him. The State merely rebutted this testimony by challenging and testing the knowledge of the witness. See *Lanier v. State*, 533 So.2d 473, 487 (Miss. 1988). There was no error here. Therefore, this assignment of error has no merit.

### WHETHER THE TRIAL COURT ERRED IN OVERRULING <u>BATSON</u> CHALLENGES?

¶58. Finley's last assignment of error alleges that the trial court erred in overruling his *Batson* challenges and failing to declare a mistrial based upon the State's abuse of its peremptory challenges to exclude blacks from his jury. Finley believes that this directly deprived him of his right to a representative jury and due process of law.

¶59. Under *Batson*, the party objecting to the peremptory challenge must first make a prima facie showing that race was the criteria for the exercise of the peremptory strike. *Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986); *Stewart v. State*, 662 So. 2d 552, 557 (Miss. 1995). The burden then shifts to the party exercising the challenge to offer a race-neutral explanation for striking the potential juror. *Batson*, 476 U.S. at 97-98; *Stewart*, 662 So. 2d at 558. Finally, the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory. *Batson*, 476 U.S. at 98; *Stewart*, 662 So. 2d at 558.

¶60. In the case sub judice, Finley satisfied the first prong of the three-step analysis by pointing out that the

State used three of four peremptory challenges against black jurors, thereby giving rise to a reasonable inference of purposeful discrimination. The State then met its burden by offering a race-neutral reason for striking jurors 7, 8, and 12. The State's reason for striking juror 7 was that she had a close friend or relative that was a felon. The reason for striking juror 8 was that she had stated that she needed to be at work. "Her principal wanted her there and she feels like she could get by for a couple of days but she doesn't want to be here all week." The State's reason for striking juror 12 was because she was 65 years of age, retired, currently not married, and has eleven children. The trial court found the explanations for juror 7 and 8 to be race-neutral. However, the trial court found the explanation for juror 12 to be a pre-textual strike. The trial court would not strike juror 12 and thus, Finley has no cause to raise a *Batson* argument on this juror on appeal. However, this issue must be determined in regards to juror 7 and 8. This determination turns on whether the trial judge abused his discretion in finding the State's explanations were race-neutral.

¶61. This Court accords great deference to the trial court in determining whether the offered explanation under the unique circumstances of the case is truly a race-neutral reason. *Stewart*, 662 So. 2d at 558. This Court will not reverse a trial judge's factual finding on this issue "unless they appear clearly erroneous or against the overwhelming weight of the evidence." *Id.* (*quoting Lockett v. State*, 517 So. 2d 1346, 1350 (Miss. 1987)). One of the reasons for this is because the demeanor of the attorney using the strike is often the best evidence on the issue of race-neutrality. *Id.* at 559 (*citing Hernandez v. New York*, 500 U.S. 352, 365 (1991). In addition to the demeanor of the attorney, the trial court must consider all other relevant circumstances, such as the way prior peremptory strikes have been used and the nature of the questions on voir dire. *Stewart*, 662 So. 2d at 559. This Court should defer to the trial judge's discretion in the case sub judice. Therefore, he did not err in denying Finley's *Batson* motion. This assignment of error is without merit.

## CONCLUSION

¶62. Specifically, this Court finds that: (1) the trial court did not err in denying Finley's requested jury instructions; (2) the trial court did not err in allowing State's rebuttal witness to testify; (3) the verdict was legally sufficient and was not against the overwhelming weight of the evidence; (4) the trial court did not err in the procedure it followed when a discovery violation was claimed by Finley; (5) Finley was not deprived of constitutionally effective assistance of counsel; (6) the trial court did not err in allowing evidence of bad acts and wrongs to be admitted in the penalty phase of the trial; (7) the trial court did not err in overruling Finley's *Batson* challenge.

¶63. **COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF SUSPENSION, REDUCTION, PROBATION, PAROLE, EARNED TIME, GOOD TIME OR ANY TYPE OF EARLY RELEASE UNDER COUNT I AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., SMITH, MILLS AND WALLER, JJ., CONCUR. SULLIVAN, P.J., CONCURS IN RESULT ONLY. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J.**

**BANKS, JUSTICE, CONCURRING:**

¶64. I concur in the result reached by the majority in this case. In my view, however, there is no discovery violation because there is no showing the state was cognizant of the fact that the witness would testify as she did on the stand. I do not join the Court's suggestion that substantial impeachment alone suffices to cure a discovery violation, nor do I join the Court's reiteration of a view that witnesses are inclined to be more truthful and open on the witness stand than in pre-trial interview.

**McRAE, J., JOINS THIS OPINION.**

1. Cecil Henderson testified that Finley went to the Meridian Police Department to straighten things out upon hearing that the police were looking for him. He ended up being detained. However, the question of whether Finley went to turn himself in willingly is in question.