909 So.2d 1184 (2005)
Travis S. GRIMES a/k/a Travis Sentell Grimes, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01592-COA.
Court of Appeals of Mississippi.
January 25, 2005.
*1186 Josie Mayfield Hudson, George F. West, Natchez, Maurice L. Tyler, New Orleans, LA, attorneys for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. Travis Grimes was convicted of burglary in the Circuit Court of Adams County, Mississippi. He was sentenced to a term of twenty-five years in the custody of the Mississippi Department of Corrections, and ordered to pay all court costs. Aggrieved by his conviction and sentence, Grimes has appealed and raised the following issues which we cite verbatim:
I. Whether the trial court violated appellant's Eighth Amendment rights and due process rights by sentencing him to the maximum penalty allowable under Mississippi law, without, inter alia, ordering a presentencing investigative report ("PSI")[.]
II. Whether the trial court erred in not granting appellant's motion for a directed verdict[.]
III. Whether the testimony of James Calhoun, a co-conspirator, was sufficiently corroborated so as to justify a guilty verdict in this case[.]
IV. Whether a new trial should be granted since the State failed to exclude every reasonable hypothesis of innocence[.]
V. Whether the trial court committed plain error by not issuing a cautionary instruction concerning accomplice testimony[.]

FACTS
¶ 2. On July 17, 2002, Officer Darian Smith of the Adams County Sheriff's Department was dispatched to 111 Redbud Lane in Adams County in response to an activated home security alarm. Gladys Lewis resided at the address. During the investigation, Officer Smith observed that the back door of Lewis' house had been kicked open. He noted that the door frame had been broken and a shoe print was located on the door. Upon entering the house, Officer Smith noticed that the telephone line had been pulled out of the wall.
¶ 3. Lewis told the officer that the sound of the house alarm awakened her. As she walked down the hall, she bumped into someone and noticed that her back door was open. That someone, whom she could not identify, hit her over the head several times with a heavy object, and repeatedly demanded money. Lewis indicated that the robbers had taken approximately $5,000. She also stated that there were two persons in the house but that she could not see their faces. Lewis indicated that her door was locked prior to going to sleep.
*1187 ¶ 4. After obtaining information from Lewis regarding the incident, Officer Smith and other law enforcement officers began to look for possible suspects. Officer James Pace of the Adams County Sheriff's Department took photographs of Lewis' house after the incident.
¶ 5. During the investigation of the crime scene, Officer Smith noticed a burgundy colored truck which he had seen earlier when responding to the call at Lewis' house. After seeing the truck again, Officer Smith asked Officer Marshall Washington to call in the vehicle license plate. This check of the license plate revealed that the truck belonged to a Joseph Holleman from New Orleans, Louisiana, who had been reported as missing. The officers took the two persons in the vehicle into custody for questioning regarding the missing person. The persons taken into custody were identified as Okanlawan Norbet and Chivas McElven, both residents of New Orleans.
¶ 6. Smith and two other officers drove to an address on a street, very close to where the incident occurred. These officers heard someone running through a wooded area behind the house. The officers searched the area and located an individual who was later identified as James Calhoun. Calhoun was also taken into custody.
¶ 7. At trial, Norbet testified that along with Grimes, McElven, and Calhoun, he had come to Natchez, Mississippi, to rob an individual named Tyrone Carter. McElven also testified that when they discovered Tyrone Carter was in jail, the four of them decided to rob his girlfriend, Lewis. Norbet stated that he and McElven served as "lookouts," while Grimes and Calhoun went inside Lewis' house. McElven indicated that as Grimes got out of the vehicle to enter Lewis' house, he retrieved a handgun out of the vehicle.
¶ 8. Ryan Marvel, Calhoun's cousin, testified that Calhoun and Grimes came to his house on July 17, 2002, looking for another individual. Marvel stated that Grimes mentioned that Grimes and Calhoun had "kicked in the girl's door."
¶ 9. On March 25, 2003, Grimes was found guilty of burglary of a dwelling and found not guilty of armed robbery. He was sentenced to a term of twenty-five years in the custody of the Mississippi Department of Corrections.

ISSUES AND ANALYSIS

I.

Whether the trial court violated appellant's Eighth Amendment rights and due process rights by sentencing him to the maximum penalty allowable under Mississippi law, without, inter alia, ordering a presentencing investigative report ("PSI").
¶ 10. Grimes contends that his twenty-five year sentence was so unduly harsh and excessive as to violate his Eighth Amendment protection against cruel and unusual punishment. He claims that the trial court failed to state why the maximum penalty was appropriate.
¶ 11. Upon receiving the guilty verdict, the trial court indicated that a presentence investigation was unnecessary because it had already heard "extensive evidence" through the testimony presented.
¶ 12. During the sentencing hearing, the court noted that the testimony of the co-defendants showed this was a very serious matter. The co-defendants stated that they (1) traveled from New Orleans to commit the crime, (2) broke into an occupied dwelling, and (3) were armed. After consideration of the evidence, the trial *1188 judge imposed the maximum penalty for burglary.
¶ 13. Generally, a sentence that is within the range allowed by statute will not be disturbed on appeal. Stromas v. State, 618 So.2d 116, 122 (Miss.1993). "However, where a sentence is `grossly disproportionate' to the crime committed, the sentence is subject to attack on the grounds that it violates the Eighth Amendment prohibition of cruel and unusual punishment." Id. In this case, the sentence was not grossly disproportionate. It fell within the limits set by the legislature for this offense. The judge determined that the circumstances of the offense supported a penalty on the high end. This Court cannot say that finding was an abuse of discretion.
¶ 14. Grimes has questioned the failure of the trial court to require a presentence report. A presentence investigation is not mandatory prior to the trial court's determination of a defendant's sentence. McCray v. State, 785 So.2d 1079(¶ 11) (Miss.Ct.App.2001). Therefore, this Court finds the issue to be without merit.

II.

Whether the trial court erred in not granting appellant's motion for a directed verdict.
¶ 15. Grimes asserts that his motion for a directed verdict should have been granted. He claims there was no physical evidence which linked him to the burglary, nor could Lewis identify him as the person who entered her home.
¶ 16. In reviewing the denial of a motion for a directed verdict, this Court adheres to the following:
Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.
Conners v. State, 822 So.2d 290(¶ 6) (Miss.Ct.App.2001).
¶ 17. In this case, the State presented eyewitness testimony from the co-conspirators, who identified Grimes as having broken into Lewis' home. "Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." Finley v. State, 725 So.2d 226(¶ 32) (Miss.1998). In this instance, the jury resolved the question of weight and credibility in favor of the co-conspirators.
¶ 18. Having reviewed the record, this Court finds that the testimony provided by the co-conspirators was sufficient for the court to deny a motion for a directed verdict.

III.

Whether the trial court erred in failing to grant a motion for a new trial.
¶ 19. Grimes alleges error in the failure of the trial court to grant his motion for a new trial. Grimes filed a very succinct motion for a new trial which read: "NOW INTO COURT, through undersigned counsel, comes MR. TRAVIS GRIMES, who hereby requests new trial based on the following: 1. The verdict in this case was contrary to the law and evidence. 2. The admission of certain pieces of evidence, over defense's objection(s), resulted in prejudicial error to Mr. Travis Grimes. 3. WHEREFORE, mover herein prays that this motion be granted." The record before us does not reflect any oral argument on this motion.
*1189 ¶ 20. The trial court's denial of Grimes' motion for a new trial was equally succinct saying: "IT IS HEREBY ORDERED that Mr. Grimes' Motion for a New Trial is hereby denied." In the brief filed with this Court, Grimes now argues that his motion for a new trial should have been sustained because the testimony of James Calhoun was not sufficiently corroborated to sustain a guilty verdict.
¶ 21. Grimes was obligated to fully place this issue before the trial court as opposed to seeking to develop it in his brief to this Court. The failure of Grimes to properly present this issue to the trial court for its consideration means that it has not been properly preserved for appellate review. Sanchez v. State, 792 So.2d 286(¶ 18) (Miss.Ct.App.2001).
¶ 22. While holding this issue as not properly before the Court, we note that a motion for a new trial is intended to test the weight of the evidence. Jackson v. State, 755 So.2d 45(¶ 8) (Miss.Ct.App.1999). The decision to grant a new trial is within the sound discretion of the trial court which should only do so to prevent an unconscionable injustice. Carr v. State, 847 So.2d 867(¶ 20) (Miss.Ct.App.2002). If we were to apply this standard to the record before us, Grimes would still be entitled to no relief on this issue.

IV.

Whether the trial court erred in failing to grant a motion for a new trial based on the State's failure to exclude every reasonable hypothesis of innocence.
¶ 23. Grimes contends that the State failed to exclude every reasonable hypothesis of innocence. Grimes cites Fisher v. State, 481 So.2d 203, 212 (Miss.1985) and claims that "in circumstantial evidence cases, the State is required to prove the defendant's guilt not only beyond a reasonable doubt, but to the exclusion of every reasonable hypothesis consistent with innocence." However, this is not a circumstantial evidence case.
¶ 24. The State presented the eyewitness testimony of the co-conspirators who testified to Grimes' participation in the crime. The State presented more than circumstantial evidence. It was then left to the jury to decide the weight and credibility of that evidence. Finley, 725 So.2d at (¶ 32). This issue is without merit.

V.

Whether the trial court committed plain error by not issuing a cautionary instruction concerning accomplice testimony.
¶ 25. Grimes did not request a cautionary instruction on accomplice testimony. He now urges this Court to find as plain error the failure of the trial court to sua sponte grant a cautionary instruction on accomplice testimony. A defendant has an obligation to present to the trial court those matters which he desires considered. Sanchez v. State, 792 So.2d at (¶ 18). Where he fails to do so, that issue has not been properly preserved for purposes of appeal. Id. However, this Court may at its option notice plain error, where it affects a fundamental right. Williams v. State, 794 So.2d 181(¶ 23) (Miss.2001). This matter does not rise to the level of a fundamental right, additionally, it lacks merit.
¶ 26. An accomplice instruction may be given where the totality of the State's case depends upon the accomplice. Hall v. State, 785 So.2d 302(¶ 13) (Miss.Ct.App.2001). However, there exists no requirement that the trial court offer a sua sponte instruction on accomplice testimony. Jones v. State, 872 So.2d 53(¶ 24) *1190 (Miss.Ct.App.2003). In this case, the State's case is not totally dependent upon an accomplice. The State presented the testimony of Marvel who indicated that Grimes told him what had transpired. This Court affirms the trial court's decision.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF BURGLARY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, PJJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.